Mr. Justice SWAYHE
 

 delivered the opinion of the court.
 

 "We are met at the threshold of the investigation by the proposition, on the part of the defendant in error, that this court has no jurisdiction of the controversy between the parties, and that the case must be dismissed.
 

 The defendant in error holds the lands in controversy by the right of preemption, under the laws of the United States; and it is admitted that his title is valid and must prevail, unless his adversary has proved a better one. The plaintiff in error insists that such a title is shown in the record, — by a grant from the government of Spain to Paul Toups, in 1796, confirmed by the acts of Congress” of the 8d of March, 1807, of the 12th of April, 1814, of the 11th of May, 1820, and especially by the act of the 18th of August, 1856.
 

 Hone of these acts, except the one last mentioned, at
 
 *208
 
 tempted to fix definitely the locality and boundaries of the grant. Tlrat act refers to surveys made by Hawke, in 1854, and confirms them. The plaintiff in error claims according to these surveys. They include the land in controversy. But the confirmation by this act was accompanied by important conditions.
 

 [The learned judge here read the provisos as given, supra, p. 206, in the statement of the case.]
 

 These provisos expressly save the rights, whatever they may be, of the defendant in error.
 

 The act, considered in its entirety, confirmed to the plaintiff whatever he was entitled to by virtue of the original grant, conceding that to have been valid. It neither enlarges nor diminishes what the grant gave him. It extinguishes all claim, on the part of the United States,, to the land covered by the surveys; but as regards all adverse claimants, it determines nothing, and concludes no one. .It gives to the settlers upon the land, in express terms, the right to institute and maintain the litigation necessary to enable them to test the validity of the surveys. It leaves adverse claimants otherwise where they were before Congress legislated upon the subject, and in all respects as if this act had not been passed.
 

 The defendant in error does not deny that a grant was made as alleged by the plaintiff in error, nor that it was confirmed by Congress; but he denies that its boundaries were properly defined by the surveys of Iiawke; and he asserts, that if properly located it will not include the land in dispute. The plaintiff in error insists that these surveys conformed to the grant, and that they are made conclusive by the act of 1856.
 

 The Supreme Court of Louisiana gave to this act the same construction which we have given, and proceeded'to settle the rights of the parties according to the evidence.
 

 The controversy in that court turned wholly upon the question of the locality of the eastern boundary of the grant. The plaintiff' contended that it was a line eighty arpens from the west bank of the Mississippi River. The defendant al
 
 *209
 
 leged that it was the Bayou Crocodile. If the plaintiff’s claim prevailed, the tract would include the land in controversy; if the defendant’s, the opposite result would follow. The court, after an elaborate examination of the subject, sustained the theory of the defendant, and gave judgment accordingly.
 

 Has this court jurisdiction to examine the grounds of this decision ?
 

 The case is brought here under the twenty-fifth section of the Judiciary Act of 1789. Our authority is derived from and limited by that section. This court has repeatedly held, that it does not warrant the review of an adjudication upon a mere question of boundary. The fact that the land to which the boundary relates is held by a title derived from an act of Congress does not change the result. If the title be admitted as recognized by the act, its location upon the land is a subject- wholly within the cognizance of the State tribunals, and it is not within the power of this court to revise their action. In such cases our authority is limited to errors relating to the title. If any such are committed, it is our duty to correct them. If there are none, we have no more authority to interpose than in any other case of alleged maladministration of justice by a State court. A party cannot, by setting up an unfounded claim of title, compel us, after deciding the claim against him, to take to ourselves a jurisdiction which, but for such claim, we could not have exercised. Such a result would make the jurisdiction depend, not upon the nature and merits of the case, but upon what the party may choose to allege. In this way, in every, case where the title is derived from the United States, and a question of boundary is involved, this court might be constrained to do what it has uniformly held to be beyond the sphere of its power.
 

 In the case before us, the Supreme Court of Louisiana construed correctly the several acts of Congress relating to the subj ect of the controversy. Ho greater or different effect would have been given to them here if the case had been brought before us by appeal from a Circuit Court of the
 
 *210
 
 United. States. Full effect was given to the title. The error, if any were committed, was in locating it upon the land, and fixing its boundaries. In the performance of this function by that court, no treaty, act of Congress, or authority exercised under the United States, was drawn in question. We cannot, therefore, review the conclusions at which the ■court arrived.
 
 *
 
 The section referred to in express terms forbids it.
 

 The decision having been correct upon the only question ■before us for considóration, the judgment below is
 

 Aeeirmed.
 

 *
 

 McDonough
 
 v.
 
 Millandon, 3 Howard, 707; Doe
 
 v.
 
 Esclava, 9 Id. 448.