## DOWER *v.* RICHARDS.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 178. Argued December 20, 1893. — Decided February 4, 1894.

Under the Statutes of the United States, a ledge containing gold-bearing rock, which has formerly been profitably worked for mining purposes, but all work upon which has been abandoned, and which, at the date of

a town-site patent of the land within which it lies, is not known to be valuable for mining purposes, is not excepted from the operation of the town-site patent, although, after the town-site patent has taken effect, the land is found to be still valuable for mining purposes.

This court, upon a writ of error to the highest court of a State in an action at law, cannot review its judgment upon a question of fact.

THE case is stated in the opinion.

*Mr. H. L. Gear* for plaintiffs in error.

*Mr. Preston F. Simonds* for defendants in error.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an action of ejectment, brought November 15, 1887, by the executors of Philip Richards against Harriet Dower and others, in the superior court for the county of Nevada in the State of California, to recover possession of two lots in the city of Nevada in that county, which the complaint alleged that Richards in his lifetime was the owner and in possession of.

The defendants, in their answer, alleged that Harriet Dower, of whom the other defendants were servants, was the owner and in possession and entitled to the possession of a quartz ledge and mine, called the Wagner ledge, situated partly upon and crossing the lots demanded; that Richards had no other right of possession than under a town-site patent, granted by the United States to the city of Nevada in 1869; that the ledge was known to be a gold-bearing ledge, and was held and worked as such long prior and subsequent to that patent, and was by the laws of the United States excepted from that patent; and that Harriet Dower had located the ledge, and was engaged in working it, including three hundred feet on either side thereof, under those laws. The laws relied on by the defendants were the acts of July 26, 1866, c. 262; March 2, 1867, c. 177; 14 Stat. 251, 541; June 8, 1868, c. 53; 15 Stat. 67; May 10, 1872, c. 152; 17 Stat. 91; Rev. Stat. § 2392.

A jury trial was waived, and the case submitted to the Superior Court, which made findings of fact, in substance as follows : A town-site patent for a tract including the two lots demanded was issued July 1, 1869, by the United States to the city of Nevada, which, before May 1, 1887, conveyed all its title in these lots to Richards, and that title was now vested in the plaintiffs as his executors. Before the issue of that patent, the Wagner ledge was known to exist as a gold-bearing quartz lode, but had never been located or marked out; and there was no proof that any local mining rules were in force in that district. For many years before 1869 it had been profitably worked, and many tons of gold-bearing rock extracted from it, by persons who were trespassers upon the public domain, and were not shown to have had more than a mere *possessio pedis* of certain shafts, tunnels and dumps. In the winter of 1868–69, work on the ledge was abandoned, and no work was afterwards done by those persons, and the defendants did not claim under them. In 1884, Harriet Dower, being a citizen of the United States and qualified to make a mining location, attempted to make a quartz mining location upon the ledge, within the lots demanded, which in manner and form complied with the laws of the United States in respect to mining locations ; and by virtue of her location she claimed the ledge with three hundred feet on each side thereof, and since did annual work thereon as required by those laws, excavated the soil, sank shafts, erected buildings, and piled earth, sand and débris across the surface of the lots. For more than a year before her attempted location, no annual work had been done by any one upon the ledge. On May 1, 1887, Richards was the owner and in possession and entitled to the possession of the lots, and the defendants wrongfully and unlawfully ejected him from the part claimed by them, and ever since wrongfully and unlawfully withheld the possession thereof from him and his executors.

Upon the facts so found, the court decided, as matter of law, that the plaintiffs were owners and entitled to the possession of the lots; that no part of them was subject to location as a mining claim at the date of Harriet Dower's attempted

location; that the whole of these lots passed to Richards by the town-site patent and the subsequent conveyance; and that the plaintiffs were entitled to judgment against the defendants for the restitution of the part claimed by the latter, and for costs; and gave judgment for the plaintiffs accordingly. Upon a statement of the evidence, agreed to in writing by counsel, and certified by the judge, a motion for a new trial was made and denied. From the judgment for the plaintiffs, and from the order denying a new trial, the defendants, in accordance with the state practice, appealed to the Supreme Court of the State.

That court, as stated in its opinion filed in the case, and reported in 81 California, 44, affirmed the judgment upon the following grounds: Upon the facts found and the evidence stated in the record before that court, it decided, as matter of fact, that before 1869 a gold-bearing quartz ledge was known to exist and had been profitably worked within the limits of these lots, but had never been located or marked out; that in the winter of 1868–69 all work on the ledge was abandoned, and no work was afterwards done there until one of the defendants in 1884 made the location under which they claimed; that from the time when work was so abandoned until July 1, 1869, when the town-site patent was granted, the portion of the ledge included within the boundaries of these lots was regarded as worked out, and as of no further value for mining purposes, and was not known to be valuable for mining purposes at the date of that patent, nor discovered to be so before the plaintiffs and their predecessors occupied and improved the lots for the purpose of residence under the town-site patent. Having decided that to be the state of facts at the time when the town-site patent took effect — and assuming that the provision of the act of March 2, 1867, that no title should be acquired by a town-site patent "to any mine of gold, silver, cinnabar, or copper," was not repealed by the provision of the act of June 8, 1868, c. 53, that no title should be so acquired to "any valid mining claim or possession held under the existing laws of Congress," but stood with it, as in the reënactment of both provisions in section 2392 of the Revised Statutes — the court decided, as matter of law, that land not known at

the time to be valuable for minerals was not excepted from the operation of a town-site patent, even if afterwards found to contain minerals which might be profitably worked. The defendants thereupon sued out this writ of error.

The only Federal question presented by the writ of error is whether there was error in this decision in matter of law.

The proposition of law on which the plaintiffs in error rely is thus stated in their brief: "When a quartz ledge, known to be gold-bearing and to have been profitably worked prior to the acquisition of a town-site patent in the year 1869, and not then worked out, is situated within the exterior boundaries of the patent," "the rights of the government and its mining grantees are not limited to such actual mining or tunnel possession as may have existed before the town-site patent; or to any continuance of a mining claim or possession by prior locators or their grantees; but the government owns and can grant the right to any quartz mine or gold-bearing ledge, which was known to exist and to be valuable for minerals before the town-site patent was obtained, and which was not worked out, when the town-site patent was obtained; and the rights of a subsequent locator under the government, by virtue of its reservation of the mine, and of the mining acts of 1866 and 1872, include a reasonable quantity of surface for the convenient working of the ledge, not exceeding three hundred feet on each side thereof."

The essential difference between this proposition and that affirmed by the Supreme Court of the State of California is that the plaintiffs in error insist that if the ledge in question was known to have been gold-bearing and to have been profitably worked before the acquisition of the town-site patent, and had not in fact been worked out before the acquisition of that patent, the right to that ledge was not included in the patent, but was reserved to the United States, and would pass by a subsequent mining location; whereas the court held that if the ledge was not known, at the time of the acquisition of the town-site patent, to contain such an amount of minerals as to be valuable for mining purposes, it was not excepted from the operation of that patent.

There can be no doubt that the decision of the Supreme Court of the State in this respect was correct. It is established by former decisions of this court, that, under the acts of Congress which govern this case, in order to except mines or mineral lands from the operation of a town-site patent, it is not sufficient that the lands do in fact contain minerals, or even valuable minerals, when the town-site patent takes effect; but they must at that time be known to contain minerals of such extent and value as to justify expenditures for the purpose of extracting them; and if the lands are not known at that time to be so valuable for mining purposes, the fact that they have once been valuable, or are afterwards discovered to be still valuable, for such purposes, does not defeat or impair the title of persons claiming under the town-site patent. *Deffeback* v. *Hawke*, 115 U. S. 392; *Davis* v. *Weibbold*, 139 U. S. 507.

The principal ground on which the plaintiffs in error seek to reverse the judgment of the Supreme Court of California is that its decision in matter of fact was erroneous, and contrary to the weight of the evidence in the case. But to review the decision of the state court upon the question of fact is not within the jurisdiction of this court.

In the legislation of Congress, from the foundation of the government, a writ of error, which brings up matter of law only, has always been distinguished from an appeal, which, unless expressly restricted, brings up both law and fact. *Wiscart* v. *Dauchy*, 3 Dall. 321; *United States* v. *Goodwin*, 7 Cranch, 108; *Cohens* v. *Virginia*, 6 Wheat. 264, 410; *Hemmenway* v. *Fisher*, 20 How. 255, 258; *In re Neagle*, 135 U. S. 1, 42.

In the first Judiciary Act, the whole appellate jurisdiction of this court was limited to matters of law. While an appeal lay from the District Court to the Circuit Court in admiralty cases, neither the judgments or decrees of the Circuit Court, whether in law, equity or admiralty, nor judgments or decrees of the highest court of a State, could be reviewed by this court, except by writ of error. Act of September 24, 1789, c. 20, §§ 19, 22–25; 1 Stat. 83–86.

Under that act, it was held that a decree in admiralty could not be reviewed by this court in matter of fact; and Chief Justice Ellsworth, after laying down the rule that the appellate jurisdiction of this court could only be exercised within the regulations prescribed by Congress, said : " It is to be considered, then, that the judicial statute of the United States speaks of an appeal and of a writ of error ; but it does not confound the terms, nor use them promiscuously. They are to be understood, when used, according to their ordinary acceptation, unless something appears in the act itself to control, modify or change the fixed and technical sense which they have previously borne. An appeal is a process of civil law origin, and removes a cause entirely, subjecting the fact, as well as the law, to a review and retrial ; but a writ of error is a process of common law origin, and it removes nothing for reëxamination but the law." *Wiscart* v. *Dauchy*, 3 Dall. 327 ; *The Perseverance*, 3 Dall. 336 ; *The Charles Carter*, 4 Dall. 22.

In 1803, Congress substituted an appeal from the Circuit Court to this court, instead of a writ of error, in cases in equity and in admiralty ; and upon such an appeal the facts as well as the law were open to review in both those classes of cases until 1875, when the appeal in admiralty was restricted to questions of law. Act of March 3, 1803, c. 40 ; 2 Stat. 244 ; *The San Pedro*, 2 Wheat. 132 ; *The Baltimore*, 8 Wall. 377 ; Rev. Stat. § 692 ; Act of February 16, 1875, c. 77, § 1 ; 18 Stat. 315 ; *The Francis Wright*, 105 U. S. 381.

Judgments of the Circuit Court in actions at law have remained reviewable by writ of error only. *Jones* v. *La Vallette*, 5 Wall. 579 ; Act of July 4, 1840, c. 43, § 3 ; 5 Stat. 393 ; Rev. Stat. § 691. Upon such a writ of error, this court, as is well settled, cannot review a decision of a question of fact, even if by the local practice, as in Louisiana, the law and the facts are tried together by the judge without a jury.

In such a case, Mr. Justice Story said : " We have no authority, as an appellate court, upon a writ of error, to revise the evidence in the court below, in order to ascertain whether the judge rightly interpreted the evidence or drew right conclusions from it. That is the proper province of the jury ; or of

the judge himself, if the trial by jury is waived, and it is submitted to his personal decision." *Hyde* v. *Booraem*, 16 Pet. 169, 176.

In a petitory action, in the nature of ejectment, to recover land in Louisiana, the subject was fully explained by Chief Justice Taney, who (according to the original opinion on file, misprinted in some particulars in the official report) said: "According to the laws of that State, unless one of the parties demands a trial by jury, the court decides the fact as well as the law; and if the judgment is removed to a higher court for revision, the decision upon the fact as well as the law is open for examination in the appellate court. The record transmitted to the superior court, therefore, in the state practice necessarily contains all the evidence offered in the inferior court. And as there is no distinction between courts of law and courts of equity, the legal and equitable rights of the parties are tried and decided in the same proceeding. In the courts of the United States, however, the distinction between courts of law and of equity is preserved in Louisiana as well as in the other States. And the removal of the case from the Circuit Court to this court is regulated by act of Congress, and not by the practice of Louisiana; and the writ of error, by which alone a case can be removed from a Circuit Court when sitting as a court of law, brings up for revision here nothing but questions of law; and if the case has been tried according to the Louisiana practice, without the intervention of a jury, the decisions of the Circuit Court upon questions of fact are as conclusive as if they had been found by the jury." The Chief Justice stated that, upon the first argument of the case at a former term, the court, its attention "not having been drawn to the difference between an appeal in the state practice, and the writ of error from this court," and being of opinion that the weight of evidence was against the authenticity of an instrument under which one of the parties claimed title, and which the Circuit Court had held to be authentic, therefore reversed the judgment of that court; but that this court, upon reconsideration, was "unanimously of opinion that the decision of the Circuit Court upon this question of fact

must, like the finding of a jury, be regarded as conclusive; that the writ of error can bring up nothing but questions of law; and that, in deciding the question of title in this court, the paper referred to must be treated and considered as authentic and sufficiently proved;" and had therefore ordered the case to be reargued. *United States* v. *King*, 7 How. 833, 844, 845. Upon the final argument, while four of the justices dissented from the opinion of the court upon the principal question of law presented by the record, none of them differed from the Chief Justice on the question of practice; and Mr. Justice Wayne, who delivered the principal dissenting opinion, said: "No point has been more repeatedly and authoritatively settled, than that this court will not, upon a writ of error, revise or give judgment as to the facts, but takes them as found by the court below, and as they are exhibited by the record." 7 How. 865. See also *Parks* v. *Turner*, 12 How. 39, 43; *Arthurs* v. *Hurt*, 17 How. 6, 12; *Lanfear* v. *Hunley*, 4 Wall. 204, 209; *Generes* v. *Campbell*, 11 Wall. 193; *Jeffries* v. *Mutual Ins. Co.*, 110 U. S. 305, 309.

The only appellate jurisdiction which has ever been conferred by Congress upon this court to review the judgments or decrees, at law or in equity, of the highest court of a State, has been by writ of error. *Cohens* v. *Virginia*, 6 Wheat. 264, 410; *Verden* v. *Coleman*, 22 How. 192; Act of September 24, 1789, c. 20, § 25; 1 Stat. 85; Act of February 5, 1867, c. 28, § 2; 14 Stat. 386; Rev. Stat. § 709; Act of March 3, 1891, c. 517, § 5; 26 Stat. 827.

Such a writ of error can be sustained only when the decision of the state court is against a right claimed under the Constitution and laws of the United States. *Montgomery* v. *Hernandez*, 12 Wheat. 129; *Missouri* v. *Andriano*, 138 U. S. 496. And if the decision of the state court rests on an independent ground of law, not involving any Federal question, this court has no jurisdiction. *New Orleans Waterworks* v. *Louisiana Sugar Co.*, 125 U. S. 18; *Eustis* v. *Bolles*, 150 U. S. 361; *California Powder Works* v. *Davis*, *ante*, 389. The reasons against its jurisdiction are as strong, if not stronger, when the decision of the state court proceeds upon matter of fact only.

When, indeed, the question decided by the state court is not merely of the weight or sufficiency of the evidence to prove a fact, but of the competency and legal effect of the evidence as bearing upon a question of Federal law, the decision may be reviewed by this court. It was accordingly said by Mr. Justice Catron : " The powers of the Supreme Court are limited in cases coming up from the state courts, under the twenty-fifth section of the Judiciary Act, to questions of law, where the final judgment or decree draws in question the validity of a treaty or statute of the United States, &c., or where their construction is drawn in question, or an authority exercised under them ; and as the admission of evidence to establish the mere fact of boundary in regard to the extent of grant cannot raise a question involving either the validity or construction of an act of Congress, etc., this court has no jurisdiction to consider and revise the decision of a state court, however erroneous it may be in admitting the evidence to establish the fact. But when evidence is admitted as competent for this purpose, and it is sought to give it effect for other purposes which do involve questions giving this court jurisdiction, then the decisions of state courts on the effect of such evidence may be fully considered here, and their judgments reversed or affirmed, in a similar manner as if a like question had arisen in a Supreme Court of error of a State, when reversing the proceedings of inferior courts of original jurisdiction." *Mackay* v. *Dillon*, 4 How. 421, 447. The only questions of evidence considered in that case arose upon a bill of exceptions to the legal competency of evidence relied on to prove a title under an act of Congress.

Again, in *Almonester* v. *Kenton*, Mr. Justice Catron said : " Now that this court has no jurisdiction, under the twenty-fifth section of the Judiciary Act of 1789, to reëxamine the decision of a state court, which drew in question the mere fact of where a dividing line between two tracts of land was, is too plain for discussion. Had the decision of the Supreme Court of Louisiana stopped here, then certainly jurisdiction would be wanting." 9 How. 1, 7. And this court assumed jurisdiction of that case solely because the state court had

gone further, and had given a construction to an act of Congress.

So in *Moreland* v. *Page*, this court dismissed a writ of error to review the judgment of a state court upon a question of the proper boundary between two tracts of land, although the owner of each claimed under a grant from the United States; and Mr. Justice Grier in delivering judgment said: "It is a question of fact, depending on monuments to be found on the ground, documents in the land office, or the opinion of experts or surveyors appointed by the court or the parties. If the accident to the controversy that both parties claim title under the United States should be considered as sufficient to bring it within our jurisdiction, then every controversy involving the title to such lands, whether it involve the inheritance, partition, devise or sale of it, may, with equal propriety, be subject to the examination of this court in all time to come." 20 How. 522, 523.

In *Lytle* v. *Arkansas*, in which the Supreme Court of Arkansas had decided against a preëmptive right claimed under the laws of the United States, Mr. Justice Catron said: "It is not material whether the invalidity of the title was decreed in the Supreme Court of Arkansas upon a question of fact or of law. The fact that the title was rejected in that court authorizes this court to reëxamine the decree." 22 How. 193, 203. Those observations must be taken as applied to the case before the court, in which the decision of the question of fact depended on the legal effect of acts of officers of the United States regarding that title; and that it was not intended to enlarge the scope of the appellate jurisdiction of this court is evident from the cases there cited. See also *Magwire* v. *Tyler*, 1 Black, 195, 203.

That this court, in an action at law, at least, has no jurisdiction to review the decision of the highest court of a State upon a pure question of fact, although a Federal question would or would not be presented according to the way in which the question of fact was decided, is clearly settled by a series of later decisions, some of them in cases very like the one now before us.

In *Lewis* v. *Campau*, (1865,) 3 Wall. 106, a decision of the state court as to the value of land conveyed by deed, upon which depended the requisite amount of stamps under the revenue law of the United States, was held not to be reviewable, although, if the value of the land had been admitted, a Federal question would have been presented. *Hall* v. *Jordan*, 15 Wall. 393.

In *Boggs* v. *Mining Co.*, (1865,) a right of possession for the purpose of extracting gold from quartz rock was claimed " by a license inferred from the general policy of the State or of the United States, in relation to mines of gold and silver and the lands containing them;" and a writ of error to review a decision of the Supreme Court of California against the claim was dismissed by this court, speaking by Chief Justice Chase, for the following reasons : " We doubt whether such a claim, even if made in the pleadings, would be such an allegation as would give jurisdiction to this court. However that may be, there was no decision of the court against the validity of such a license. The decision was, that no such license existed ; and this was a finding by the court of a question of fact upon the submission of the whole case by the parties, rather than a judgment upon a question of law. It is the same case, in principle, as would be made by an allegation, in defence to an action of ejectment, of a patent from the United States, with an averment of its loss or destruction, and a finding by the jury that no such patent existed, and a consequent judgment for the defendant. Such a judgment would deny, not the validity, but the existence of the patent. And this court would have no jurisdiction to review it." 3 Wall. 304, 310.

In *Carpenter* v. *Williams*, (1869,) it was held that this court had no jurisdiction where the decision of the state court turned upon the identity of the person to whom a recorder of land-titles confirmed, or intended to confirm, a lot of ground ; and Mr. Justice Miller in delivering judgment said : " It is a mistake to suppose that every suit for real estate, in which the parties claiming under the Federal government are at issue as to which of them is entitled to the benefit of that title, necessarily raises a question of Federal cognizance. If this were so, the title to all the vast domain, once vested in the United

States, could be brought from the state courts to this tribunal." 9 Wall. 785, 786.

In *Crary* v. *Devlin*, (decided February 21, 1876,) in an action to recover the price of alcohol sold, the defendants contended that the sale was unlawful because of a violation of the internal revenue laws of the United States. The Court of Appeals of New York gave judgment for the plaintiff, because no such violation was proved; and this court dismissed the writ of error, upon the authority of *Boggs* v. *Mining Co.*, above cited; Chief Justice Waite saying: "There could have been no decision of the Court of Appeals against the validity of any statute of the United States, because it was found that the facts upon which the defendants below relied to bring their case within the statute in question did not exist. The judgment did not deny the validity of the statute, but the existence of the facts necessary to bring the case within its operation." 23 Lawyers C. P. Co.'s Rep. 510, 511.

In *Republican River Bridge Co.* v. *Kansas Pacific Railway*, (decided a week later,) in an action at law concerning the title to real estate, in which each party claimed under a grant from Congress, a district court of the State of Kansas, to which the case had been submitted without the intervention of a jury, made findings of fact, upon which it declared the law to be for the defendant; its judgment was affirmed by the Supreme Court of the State, and the plaintiff sued out a writ of error from this court. Mr. Justice Miller, in delivering the opinion, said: "The finding by the district court was received by the Supreme Court of the State as conclusive as to all facts in issue, and it is equally conclusive upon us. Where a right is set up under an act of Congress in a state court, any matter of law found in the record, decided by the highest court of the State, bearing on the right so set up under the act of Congress, can be reëxamined here. In chancery cases, or in any other class of cases where all the evidence becomes part of the record in the highest court of the State, the same record being brought here, this court can review the decision of that court on both the law and the fact, so far as may be necessary to determine the validity of the right set up under

the act of Congress. But in cases where the facts are submitted to a jury, and are passed upon by the verdict, in a common law action, this court has the same inability to review those facts in a case coming from a state court that it has in a case coming from a Circuit Court of the United States. This conclusiveness of the facts found extends to the finding by a state court to whom they have been submitted by waiving a jury, or to a referee, where they are so held by state laws, as well as to the verdict of a jury." And *Boggs* v. *Mining Co.*, and *Crary* v. *Devlin*, above cited, were referred to as supporting this conclusion. 92 U. S. 315–317; 23 Lawyers C. P. Co.'s Rep. 515, 516.

Whether the suggestion in that opinion, as to the power of this court in chancery cases to review the decision of a state court on both the law and the fact, is to be limited to cases in which the decree of that court is general upon the whole record, without specifically passing upon any question of fact; and whether the suggestion, especially if more broadly construed, can be reconciled with the earlier opinions of this court, already cited, upon writs of error to the Circuit Court of the United States in admiralty cases, or in cases tried according to the law of Louisiana ; need not now be considered.

In *Martin* v. *Marks*, (1877,) upon a writ of error to the Supreme Court of Louisiana in an action in the nature of ejectment, Mr. Justice Miller, speaking for this court, said that the question whether a selection of swamp lands had in fact been filed by the surveyor general of Louisiana in the General Land Office was "not of that Federal character which authorizes us to review the decision of the Supreme Court of Louisiana upon it." 97 U. S. 345, 348.

In *Kenney, trustee,* v. *Effinger*, (1885,) this court dismissed a writ of error to the Supreme Court of Appeals of the State of Virginia, for reasons stated in the opinion delivered by Mr. Justice Field as follows : "The writ of error brought by the trustee raises no Federal question which we can consider. Whether the bond of Effinger was or was not executed with reference to Confederate notes is a question of fact, for the state court, and not one of law for this court." 115 U. S. 577.

In *Quimby* v. *Boyd*, (1888,) in which various errors were assigned in a judgment of the Supreme Court of the State of Colorado between two adverse claimants of a lode, this court, speaking by the present Chief Justice, dismissed the writ of error for want of jurisdiction, because some of the objections made in this court had not been taken below, and " the other alleged errors involved questions, either of fact, or of state and not of Federal law." 128 U. S. 488, 489.

In *California Powder Works* v. *Davis, ante,* 389, in which each party to a suit to quiet title claimed under a patent from the United States confirming a Mexican grant, and the judgment of the Supreme Court of California rested on the proposition of fact that the grant under which the plaintiff in error deraigned title was simulated and fraudulent, this court dismissed the writ of error for want of jurisdiction.

The case now before us is an action of ejectment, which was submitted to the Supreme Court of the same State, according to the local practice, upon findings of fact and a statement of evidence by an inferior court of the State. From the foregoing reasons and authorities, it follows that this court cannot review the decision of the state court upon the question of fact whether the ledge, at the time when the town-site patent took effect, was known to be valuable for mining purposes; and the only question of Federal law in the case having been rightly decided by that court, its judgment is

*Affirmed.*

MR. JUSTICE HARLAN concurred in the judgment of affirmance, but not in all the reasoning of the opinion.