## GILES *v.* TEASLEY, BOARD OF REGISTRARS OF MONTGOMERY COUNTY, ALABAMA.

### GILES *v.* TEASLEY.

ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.

Nos. 337, 338.　Argued January 5, 1904.—Decided February 23, 1904.

The right of this court to review the decisions of the highest court of a State is, even in cases involving the gravity?of statements charging violations by the provisions of a state constitution of the Fifteenth Amendment, circumscribed by the rules established by law, and in every case coming to the court on writ of error or appeal the question of jurisdiction must be answered, whether propounded by counsel or not.

Where the state court decides the case for reasons independent of the Federal right claimed its action is not reviewable on writ of error by this court.

A negro citizen of Alabama and who had previously enjoyed the right to vote, and who had complied with all reasonable requirements of the

board of registrars, was refused the right to vote for, as he alleged, no reason other than his race and color, the members of the board having been appointed and having acted under the provisions of the state constitution of 1901. He sued the members of the board for damages for such refusal in an action, and applied for a writ of mandamus to compel them to register him, alleging in both proceedings the denial of his rights under the Federal Constitution and that the provisions of the state constitution were repugnant to the Fifteenth Amendment. The complaint was dismissed on demurrer and the writ refused, the highest court of the State holding that if the provisions of the state constitution were repugnant to the Fifteenth Amendment they were void and that the board of registrars appointed thereunder had no existence and no power to act and would not be liable for a refusal to register him, and could not be compelled by writ of mandamus to do so; that if the provisions were constitutional the registrars had acted properly thereunder and their action was not reviewable by the courts.

*Held* that the writs of error to this court should be dismissed as such decisions do not involve the adjudication against the plaintiff in error of a right claimed under the Federal Constitution but deny the relief demanded on grounds wholly independent thereof.

THESE cases are writs of error to the Supreme Court of the State of Alabama.

In No. 337, the action was brought to recover damages in the sum of $5,000 against the board of registrars of Montgomery County, Alabama, for refusing to register the plaintiff as a qualified elector of the State. The substance of the complaint is: The plaintiff is a native of the State of Alabama, a resident of Montgomery County for thirty years, and of the voting precinct for more than two years. He applied for registration, having theretofore enjoyed the right of voting in the State; the application was made to the board of registrars on March 13, 1902; the plaintiff complied with all reasonable requirements of the board, but was arbitrarily refused the right of registration for no other reason than his race and color. At the same time a large number of negroes similarly situated were likewise refused, while all the white men were registered and given certificates, without denial, nor was any question raised as to their qualifications. The registrars required the plaintiff and all members of his race to furnish the testimony of two white men as to their qualifications and refused to accept the testimony of colored persons, while all the whit  men

were registered without any proof except the oath of the applicant. It is alleged that sections 180, 181, 183, 184, 185, 186, 187 and 188 of article 8 of the constitution of the State of Alabama, which went into effect November 28, 1901, under authority of which the registrars were acting, was intended, designed and enacted by the constitutional convention to deny and abridge the right of the plaintiff and others of his race in the State to vote, solely on account of race, color and previous condition of servitude. The convention of the State of Alabama was composed entirely of white men, although the population of the State is composed of 1,001,152 white and 827,545 colored persons. It is alleged that article 180 of said constitution is repugnant to the Fourteenth and Fifteenth Amendments to the Constitution of the United States because subdivisions one and two of said section do not contain a statement of qualifications applicable to all, regardless of race, color and previous condition of servitude, but discriminate against negroes solely on account of race. Subdivision three is unreasonable and void, in not defining what character a good citizen must have and what obligations he must understand under a republican form of government, and gives to the registrars a wide discretion and authority and invests them with arbitrary power. That section 181 of article 8 is repugnant to the said amendments to the Constitution of the United States in that, while it pretends to describe the qualifications of persons who shall apply for registration after January 1, 1903, it was in truth and in effect enacted to apply to the plaintiff and all negroes of the State, and not to operate against and affect any white persons in the State, and is a part of a scheme to disfranchise the negroes of Alabama on account of race, color and previous condition of servitude. By refusing to permit the negroes to register the board of registrars is forcing them to wait until January 1, 1903, when section 181 comes into effect. It is charged that said board is composed exclusively of white men, and the right of appeal given from the action of said board to the Circuit Court and thence to the Supreme Court of the State was given to more effectually hinder the plaintiff and others of his race in their right to vote and not to accom-

plish their registration. The negroes are excluded from serving on juries in the trial courts of the State and have been for many years, although qualified for the service, on account of race, color and previous condition of servitude. That on appeal the plaintiff would encounter the same prejudice and obtain the same result as before the board of registrars. The defendants, well knowing the object of the constitutional provisions, were appointed by the State to administer the same, and while so engaged did wilfully and wrongfully refuse to register the plaintiff and others of his race for no other reason than their race and color, and thus deprived them of the right to vote as electors of the State, contrary to the provisions of the first section of the Fifteenth Amendment to the Constitution of the United States.

In No. 338, the petition for mandamus contains like allegations as to the right of the petitioner to be registered as a voter in the State of Alabama, and avers that he is a person of good character and understands the duties of citizenship under a republican form of government. The petitioner avers, as in his petition for damages, his application to be registered March 13, 1902, which was arbitrarily refused for the reasons set forth in the petition for damages, contrary to the right of the petitioner. He repeats the allegations as to the registration of white persons, and avers that the denial of registration to him and others of his race was a denial by the State of Alabama of the equal protection of the laws and the denial of his right to vote solely on account of his race, color and previous condition of servitude, and was in violation of the Fourteenth and Fifteenth Amendments to the Constitution of the United States. Allegations are inserted as to the intent and purpose of the State in calling the constitutional convention and the adoption of the constitution September 3, 1901. It is alleged that the sections 180, 181, 183, 184, 185, 186, 187 and 188 of article 8 of said new constitution were enacted with the intent and for the purpose set forth in the petition for damages. Allegations are set forth as to the exclusion of the negroes from representation, notwithstanding the part they compose of the population of the State. It is claimed that

section 180 of article 8 is obnoxious and repugnant to the Fourteenth and Fifteenth Amendments to the Constitution of the United States, in that it divides the inhabitants into three classes, viz: 1, soldiers' class; 2, descendants of soldiers' class; 3, a class not soldiers nor their descendants. That the class not soldiers or their descendants are under greater restrictions and given greater burdens than the other classes. That section three is void and unreasonable, failing to define what duties and obligations a citizen must understand under a republican form of government, and gives too wide a discretion to the registrars, amounting to vesting them with arbitrary power. Subdivisions 1 and 2 do not contain a statement of qualifications which are applicable to all alike, but discriminate against the negroes of the State on account of race, color and previous condition of servitude. The petition in mandamus contains substantially the allegations of the petition for damages as to the manner in which the constitution was adopted, and avers that section 181, describing the qualifications of persons who apply for registration after January 1, 1903, was designed and intended to apply to petitioner and others of his race and not intended to operate against and affect white persons in the State of Alabama. It is charged that in the counties of Alabama colored persons are refused registration, while, under the same circumstances and possessing the same qualifications, white men are registered without objection, thereby compelling colored men to wait until January 1, 1903, when the provisions of section 181 will be in operation, and compelling the colored men to have greater and different qualifications than are imposed upon the white men in the State, all of which, it is charged, was in pursuance of a design to evade the terms of the Fourteenth and Fifteenth Amendments to the Constitution of the United States, and to deny to the plaintiff and others of his race the equal protection of the laws, and to deprive them of the right to vote solely on account of their race, color and previous condition of servitude. Petitioner repeats the allegations of the former petition for damages as to the composition of the board of registrars, and the remedy of appeal from their action to the courts of the State, and claims

that if such appeal was prosecuted it could not be heard and determined·before the election, but the hearing of the cases would take many years.   There are attached· to the petition as·exhibits extracts from the speeches and debates in the con-· vention of Alabama.   The petition charges that the board.of registrars refused to register colored men, so that not less than 75,000 of such persons were denied registration solely.on account of race, color and previous condition of servitude, although possessing the necessary qualifications of electors, while the white men were permitted to register without let or hindrance. Affidavits were filed with the petition setting forth the denial of the right of colored persons in various counties in the State of Alabama.   The prayer of the petition is that the aforesaid sections of the state constitution be declared absolutely null and void as repugnant to the Fourteenth and Fifteenth Amendments to the Constitution of the United States, and for a writ of mandamus commanding the board of registrars to register the plaintiff as a qualified voter of the State of Alabama, and to issue to him a certificate of the fact, and the like to all voters of his race in the State of Alabama who were such under the constitution of the State prior to the adoption of sections 180, 181, 183, 184, 185, 186, 187 and 188 of the new constitution of the State.   And that said board be further commanded not to refuse to register said petitioner or other members of his race on account of their race or color and previous condition of servitude.

·To the petitions in both cases demurrers were filed in the court of original jurisdiction, which were sustained, and upon appellate proceedings in the Supreme Court of the State of Alabama the decisions of the lower court were affirmed. These writs of error seek to bring this action of the state courts in review here.

*Mr. Wilford H. Smith* for plaintiff in error :
The record clearly shows that nothing but a Federal question was therein presented to the highest court of Alabama for decision, and that its decision was absolutely necessary to the determination of the causes, and that the judgment ren-

dered by the Supreme Court of Alabama could not have been rendered without deciding the Federal question. *Johnson* v. *Risk*, 137 U. S. 300; *Wood Machine Co.* v. *Skinner*, 139 U. S. 293.

It, however, undertook to avoid the Federal question relying on cases cited in 17 Am. & Eng. Ency. Law (2d ed.), 727.

This action has resulted in denying the rights claimed by the plaintiff in error under the Constitution of the United States, and to uphold the suffrage provisions of the constitution of Alabama, and the authority exercised under them, which were drawn in question as being repugnant to the Federal Constitution, and it is well settled that this court has jurisdiction in such cases to review the decision of a state court. *Railway Co.* v. *Elliott*, 184 U. S. 534.

The political nature of the rights involved cannot be urged against the jurisdiction of this court. *McPherson* v. *Blacker*, 146 U. S. 23. *Wiley* v. *Sinkler*, 179 U. S. 58; *Swafford* v. *Templeton*, 185 U. S. 487, were suits for damages where political rights under the Federal Constitution had been denied by virtue of an unconstitutional state statute. See also *Kinneen* v. *Wells*, 144 Massachusetts, 497.

All the material facts alleged by the plaintiff in error were admitted by the demurrers.

The purpose of framers of the suffrage provisions of the constitution of Alabama was repugnant to the Fourteenth and Fifteenth Amendments of the Constitution of the United States, such purpose being to disfranchise the negroes without disfranchising any white man. *Ah Kow* v. *Nunan*, 5 Sawyer, 553; Cooley, Constitutional Limitations (3d ed.), p. 65; *Goedell* v. *Palmer*, 15 App. Div. N. Y. 86.

Had the constitutional convention been called for the purpose of establishing an educational or a property qualification, or a qualification of good moral character for all the electors of Alabama, black and white alike, and had carried out such a purpose, the plaintiff in error and the negroes of that Commonwealth would have made no complaint. But the convention made race and color the standard of qualification by resorting to a trick or legerdemain of law in constitution

making, as evidence by the addresses in the constitutional convention on this subject.

The suffrage provisions of the constitution of Alabama are in themselves repugnant to the Fourteenth and Fifteenth Amendments to the Constitution of the United States by their language and meaning, they being so artfully constructed as to evade the prohibitions of the Federal Constitution, so that white men alone can become electors and negroes can be excluded on account of their race and color and previous condition. *Cox* v. *The State,* 144 N. Y. 396 ; *Colon* v. *Lisk,* 153 N. Y. 188 ; *People* v. *Albertson,* 55 N. Y. 50.

Not only were they constructed in defiance and in fraud of the Federal Constitution, but with great ingenuity, so as to make it difficult to get the question of their constitutionality before the courts.

Subd. 1 and 2, § 180, art. 8 are not such a statement of qualifications as are applicable to and attainable by all alike, regardless of race, color or previous condition, but were framed purposely to discriminate against the negroes of Alabama, and to deny them the same rights as electors given to white men.

Subd. 3, § 180, art. 8 is made so general and indefinite as to invest the registrars with arbitrary power, so that they could discriminate against negroes and favor white men. The citizen is left to conjecture as to what kind of good character is meant, whether good moral character, or good character for peace or violence, or for honesty and fair dealing, or for truth and veracity. Likewise is a citizen at a loss to know what or which of the manifold duties and obligations of citizenship he is required to understand in order to meet the requirements of this subdivision.

Section 186 of the suffrage article is repugnant to the Federal Constitution, in so far as the registrars were given the discretion and power of a court, with the right of appeal from their decision to the Circuit Court, thence to the Supreme Court, in view of the purpose the convention sought to accomplish by giving such discretion and power and in view of the admitted manner in which the registrars have used such discretion in the discharge of the duties of their office.

The admitted facts showing the suffrage provisions of the Alabama constitution in actual operation establish that practically all white men in the State were admitted to the electorate and given life certificates, while practically all the negroes were denied registration on account of their race and color and previous condition, which alone would render them unconstitutional, no matter what the intent was at the time of their enactment, and no matter in what form of language they were expressed. *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Davis* v. *McKeeby*, 5 Nevada, 396.

Section 181 of the suffrage article is a part of one entire scheme to evade the Fifteenth Amendment to the Constitution of the United States, and to subject the negroes of Alabama to a different test than that required of white citizens, and should also be declared null and void, since it is admitted that practically all the white men have been admitted to the electorate for life under section 180, or the temporary plan, and practically all the negroes have been refused.

To allow section 181 to stand would be to sanction the discrimination against negroes, and force them to submit to an educational and property qualification test not required of white men, in contravention of the Fourteenth and Fifteenth Amendments to the Federal Constitution. *United States* v. *Reese*, 92 U. S. 214.

Fair and equal treatment as a citizen is all that the plaintiff in error and the negroes of Alabama are contending for in this litigation, which treatment will be accorded wherever the Fifteenth Amendment to the Federal Constitution is held in proper esteem.

*Mr. William A. Gunter* for defendant in error:

The Fourteenth Amendment of the Constitution and the statutes to enforce its provisions relate only to civil rights. Either to the privileges or immunities of citizens of the United States; or, the right of life, liberty and property, unless taken away by "due process of law;" or, the equal protection of the laws. *Slaughter House Cases*, 16 Wall. 36; *Strauder* v. *West Virginia*, 100 U. S. 303–306; *Gibson* v. *Miss-*

*issippi,* 162 U. S. 566; *Virginia* v. *Rives,* 100 U. S. 313; *Williams* v. *Mississippi,* 170 U. S. 213.

The provisions of same amendment all have reference to state action exclusively, and not to any action of private individuals. *Virginia* v. *Rives,* 100 U. S. 318.

While under the fifth section of the Amendment Congress may enforce the prohibitions whenever they are disregarded by either the legislature, the executive, or the judicial department of the State, it is plain that the action of Congress to enforce a limited power cannot extend beyond the power granted.

The Fourteenth Amendment not only does not undertake to deal with political rights, but in the second section expressly contemplates that the privilege of voting may be denied at the pleasure of the State, attaching, however, a penalty in the way of a reduction of representation. The prohibitions of section one of the Amendment have no reference to political rights, and the authority of Congress, given by the fifth section, is limited by the second section.

The Fifteenth Amendment is limited to a single matter and the power of Congress to enforce the same, by appropriate legislation, is also restricted to that item. The prohibition of this amendment also refers to governmental action of the United States or by the State, and not to any action of private individuals. *Virginia* v. *Rives,* 100 U. S. 318; *Slaughter House Cases,* 16 Wall. 37, 77, 126.

The Fifteenth Amendment itself can never be violated except by a State or the United States, and not by them until there is a denial or restriction by some *law* of the right to vote.

To bring a statute within the operation of the Constitution it must appear to be passed under a grant of power contained therein, *United States* v. *Harris,* 106 U. S. 35, and to bring a case within a statute of the United States, it must appear that the right, the enjoyment of which is interfered with, is one granted or secured by the Constitution or the laws of the United States. Everything essential to make out a case must be charged positively and not inferentially. *United States* v. *Cruikshank,* 92 U. S. 549, 555.

On every writ of error to a state court the doctrine of *res judicata* is called in question. It must appear by all the certainty and according to the principles of *res judicata*, that a Federal right was directly or necessarily involved and decided adversely to the plaintiff in error claiming such right. If there are several questions involved upon one or more of which judgment may rest without the decision of a Federal question, this court is without jurisdiction to hear the case. *New Orleans* v. *New Orleans Waterworks*, 142 U. S. 84; 12 Notes to U. S. Rep. 64; *Capital Bank* v. *Cadiz Bank*, 172 U. S. 425; *Russell* v. *Place*, 94 U. S. 606.

There is a single exception to the rule that this court will adopt the state construction of its statutes and constitution, and that is "when it has been called upon to interpret the contracts of States," etc. *Mobile & Ohio R. R.* v. *Tennessee*, 153 U. S. 492, 493; *Jefferson Bank* v. *Kelly*, 1 Black, 436, 443. But if this court is not so restricted in this case, nevertheless a view of the nature of the proceeding is conclusive that the registrars were acting judicially. They were judges, and their action judicial, and not to be called in question by a suit against them personally for damages. 17 Ency. of Law (2d ed.), pp. 726, 727, 728; *Flournoy* v. *City of Jeffersonville*, 79 Am. Dec. 468; *Bradley* v. *Fisher*, 13 Wall. 335; 7 Notes to U. S. Rep. 712; *Busteed* v. *Parsons*, 54 Ala. 393, 401.

Neither the Fourteenth nor Fifteenth Amendments, or statutes enforcing their provisions, overturn the rule that a judge is not liable *civiliter* for judicial conduct. *Virginia* v. *Rives*, 100 U. S. 318; *Harrison* v. *Nixon*, 9 Pet. 503; *United States* v. *Harris*, 106 U. S. 639; *Hemsley* v. *Myers*, 45 Fed. Rep. 283; construing these amendments make it impossible to suppose that § 1979, Rev. Stat., was intended to take away from state courts the right to pass judicially on questions before them and within their jurisdiction.

No Federal question was raised in the case and adversely decided. It is impossible to discover the adjudication of any Federal question in the state court adversely to the right claimed, which is a *sine qua non* to the jurisdiction of this court. *Ins. Co.* v. *The Treasurer*, 11 Wall. 208; *Capital Bank*

v. *Cadiz Bank*, 172 U. S. 430; Rev. Stat. § 709; *Scott* v. *Jones*, 5 How. 375; *Michigan Central R. R.* v. *Michigan S. R. R.*, 19 How. 379.

The demurrer in the state court which disposed of the case did not controvert any Federal right. It only raised questions of procedure as to sufficiency of pleading and of general jurisprudence as to the individual liability of persons acting officially. If a dismissal may rest upon one of several grounds there is no right to confine it to any particular ground, and if an appeal must be based on a decision of a particular ground, when other questions equally may have been the point decided, the predicate of appeal is wanting. *Connecticut, etc.*, v. *Woodruff*, 153 U. S. 689; *Hammond* v. *Johnston*, 142 U. S. 73; *New Orleans* v. *New Orleans W. W. Co.*, 142 U. S. 79; *Delaware Nav. Co.* v. *Reybold*, 142 U. S. 636. The Rev. Stat. § 1979, under which the action is brought, is unconstitutional, and there is no basis for the suit, and if not unconstitutional has no application to this suit. *United States* v. *Harris*, 106 U. S. 629, *Baldwin* v. *Franks*, 120 U. S. 678, held that Rev. Stat. § 5519, punishing violations of the third clause of § 1980, was unconstitutional, and in *United States* v. *Reese*, 92 U. S. 214, Rev. Stat. §§ 2007, 2008, and 5506, were held to be unconstitutional as too broad for the powers given by the Constitution to Congress; that they were not appropriate legislation.

Section 1979, however, has no application to this case. *Holt* v. *Indiana Mfg. Co.*, 176 U. S. 68; *Wiley* v. *Sinkler*, 179 U. S. 58; *Swafford* v. *Templeton*, 185 U. S. 487; *Logan* v. *United States*, 144 U. S. 293.

If the constitution of Alabama were a violation of the Federal Constitution the effect would be to nullify and discharge the entire registration program. *Ex parte Yarborough*, 110 U. S. 651, 665; *Giles* v. *Harris*, 189 U. S. 475.

This court can only act upon the cases made by the pleadings, and the case here simply discloses a judgment which must necessarily rest upon grounds not touching the construction of the constitution of Alabama or any right claimed in opposition to its terms.

And it is accepted, as an undeniable proposition, that the "Denials of equal rights in the action of the judicial tribunals of the State are left to the *revisory* powers of this. court." *Virginia* v. *Rives*, 100 U. S. 322; *Strauder* v. *West Virginia*, 100 U. S. 310; *In re Wood*, 140 U. S. 278; *Gibson* v. *Mississippi*, 162 U. S. 565, 583.

And, therefore, if the right in this case sought to be vindicated rested upon a statutory declaration of a liability on the part of judges, it would make no difference, for a statute holding them liable *civiliter* would not be "appropriate legislation."

As to the clauses of the state constitution objected to while the history and circumstances of the enactment of Constitutions may be looked at, it is only for the purpose of understanding and applying the words themselves where there is obscurity or doubt about the real meaning. *Bleaker* v. *McPherson*, 146 U. S. 27; *Ogden* v. *Saunders*, 12 Wheat. 332; *Lake County* v. *Rollins*, 130 U. S. 670.

No legislative body can be held responsible for individual declarations of members when it is not evident from the laws themselves that the particular matter has been incorporated in the enactment. The *corpus delicti* is wanting and there can be no conviction, when the law does not disclose "the bloody deed." *Fletcher* v. *Peck*, 6 Cranch, 87; *Maxwell* v. *Dow*, 176 U. S. 601; *Dodge* v. *Woolsey*, 18 How. 374; *United States* v. *Des Moines*, 142 U. S. 545; *Downes* v. *Bidwell*, 182 U. S. 254; *Williams* v. *Mississippi*, 170 U. S. 222; *Lake County* v. *Rollins*, 130 U. S. 670.

The third class comprises, "All persons who are of good character and who understand the duties and obligations of citizenship under a republican form of government." This is a provision under which any citizen of any race or color or previous condition of servitude worthy to be admitted as an elector may be registered. It has been held by this court that provisions of exclusion predicated on bad character, or admission to privileges on "good character," are not discriminations against races. *Williams* v. *Mississippi*, 170 U. S. 222; *In re Wood*, 140 U. S. 284; *In re Jugiro*, 140 U. S. 291, 298.

If defendants committed any wrong or error in the admin-

istration of the law, the law cannot be blamed for the administration; and their wrong, whatever it may have been, can only be corrected by the revisory powers of this court, in the original suit or application for registration. Where the objection is not founded on defects of the law itself, but relates to its administration only, the remedy is only through the revisory powers of the courts of the United States after the state courts have decided against the claim or right founded on the Constitution and laws of the United States. *In re Wood*, 140 U. S. 284; *Gibson v. Mississippi*, 162 U. S. 583; *In re Frederick*, 149 U. S. 77; *Virginia* v. *Rives*, 100 U. S. 321.

The bad administration of *other* persons, if there has been such, defendants in error are not accountable for; nor is the law itself to be blamed for administration not traceable to its words. *Yick Wo* v. *Hopkins*, 118 U. S. 356, distinguished.

It is suggested as a solution of the whole difficulty that if the plan of *registration* under the Constitution of Alabama is in violation of the Fifteenth Amendment of the Constitution, the law is simply void and is not in the way of voting when ballots may be offered, and that until a ballot is offered and refused, there is no ground for a private citizen to ask judicial action against the validity of the void law of registration, since until then he is not injured. *Turpin* v. *Lemon*, 187 U. S. 51; *Tyler* v. *Judges of Registration*, 179 U. S. 405.

And, on the other hand, if there was only bad administration of a valid law, the objection should have been made in the course of an appeal provided for in cl. 6 of § 186 of the Constitution. It must be presumed the state court would have corrected any abuse whatever. There was, therefore, no occasion for or right to a mandamus.

Independently of all other questions, application for the mandamus could not be awarded after the defendants have long since been out of office by expiration of their term, and could not possibly obey the judgment, which this court, it seems, must judicially know here to be the case. Case No. 338 should abate. *United States* v. *Boutwell*, 17 Wall. 604; *Mills*

v: *Green,* 159 U. S. 651, 657; Century Dig. vol. 33, col. 2132, sec. 52 ; col. 2151, sec. 60.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The right to review in this court the judgment of a state court is regulated by section 709 of the Revised Statutes. The extent and nature of the remedy therein given has been the subject of numerous decisions. The jurisdiction in the cases now under consideration is invoked because of alleged denial of the rights of the plaintiff in error, secured to him by the Fourteenth and Fifteenth Amendments to the Constitution of the United States. When the jurisdiction depends, as in the present cases, upon a right, privilege or immunity under the Constitution of the United States specially set up and denied in the state court, certain propositions, it is said by Mr. Chief Justice Fuller, speaking for the court in *Sayward* v. *Denny,* 158 U. S. 180, 184, are well settled, among others, " The right on which the party relies must have been called to the attention of the court, in some proper way, and the decision of the court must have been against the right claimed. *Hoyt* v. *Sheldon,* 1 Black, 518 ; *Maxwell* v. *Newhold,* 18 How. 511, 515. Or, at all events, it must appear from the record, by clear and necessary intendment, that the Federal question was directly involved so that the state court could not have given judgment without deciding it." It is equally well settled that if the decision of a state court rests on an independent ground—one which does not necessarily include a determination of the Federal right claimed—or upon a ground broad enough to sustain it without deciding the Federal question raised, this court has no jurisdiction to review the judgment of the state court. *New Orleans* v. *New Orleans Waterworks Co.,* 142 U. S. 79; *Eustis* v. *Bolles,* 150 U. S. 361; *Dower* v. *Richards,* 151 U. S. 658, 666; *Wade* v. *Lawder,* 165 U. S. 624, 628.

In every case which comes to this court on writ of error or appeal the question of jurisdiction must be first answered, whether propounded by counsel or not. *Defiance Waterworks*

*Company* v. *Defiance,* decided at this term, 191 U. S. 184. In No. 337, in which an action was begun against the registrars for damages, the case was decided upon demurrer to the declaration. The Supreme Court of Alabama placed its decision affirming the lower court, which sustained the demurrer, upon two grounds, as follows :

" If we accept (without deciding) as correct the insistence laid in appellant's brief that section 186 of article VIII of the constitution of 1901 is void because repugnant to the Fourteenth and Fifteenth Amendments of the Constitution of the United States, then the defendants were wholly without authority to register the plaintiff as a voter, and their refusal to do so cannot be made the predicate for a recovery of damages against them.

" On the other hand, if that section is the source of their authority, the jurisdiction is expressly conferred by it upon the defendants as a board of registrars to determine the qualifications of plaintiff as an elector and of his right to register as a voter. For their judicial determination that plaintiff did not possess the requisite qualifications of an elector, and their judicial act of refusing to register him predicated upon that determination, they are not liable in this action. 17 Am. & Eng. Ency. Law (2d ed.), pp. 727, 728, and notes.—Affirmed." 136 Alabama, 164.

A consideration of the plaintiff's petition shows that it attacked the provisions of the Alabama constitution regulating the qualifications and registration of the electors of the State as an attempt to disregard the provisions of the Fourteenth and Fifteenth Amendments to the Constitution of the United States, by qualifying the whites to exercise the elective franchise and denying the same rights to the negroes of the State. It is alleged that sections 180, 181, 182, 183, 184, 185, 186, 187 and 188 of the Alabama constitution, which took effect on November 28, 1901, and under which the defendants were appointed registrars, and were acting at the time, were enacted by the State of Alabama, through its delegates to the constitutional convention, to deny and abridge the right of the plaintiff and others of his race to vote in the State on account of their color

and previous condition of servitude, without disfranchising a single white man in the State. These sections of the Alabama constitution were before this court in the case of *Giles* v. *Harris*, 189 U. S. 475, and the general plan of voting and registration was summarized by Mr. Justice Holmes, delivering the opinion of the court as follows :

"By § 178 of article 8, to entitle a person to vote he must have resided in the State at least two years, in the county one year and in the precinct or ward three months, immediately preceding the election, have paid his poll tax and have been duly registered as an elector. By § 182, idiots, insane persons and those convicted of certain crimes are disqualified. Subject to the foregoing, by § 180, before 1903 the following male citizens of the State, who are citizens of the United States, were entitled to register, viz: First. All who had served honorably in the enumerated wars of the United States, including those on either side in the 'war between the States.' Second. All lawful descendants of persons who served honorably in the enumerated wars or in the war of the Revolution. Third. 'All persons who are of good character and who understand the duties and obligations of citizenship under a republican form of government.' . . . By § 181, after January 1, 1903, only the following persons are entitled to register : First. Those who can read and write any article of the Constitution of the United States in the English language, and who either are physically unable to work or have been regularly engaged in some lawful business for the greater part of the last twelve months, and those who are unable to read and write solely because physically disabled. Second. Owners or husbands of owners of forty acres of land in the State, upon which they reside, and owners or husbands of owners of real or personal estate in the State assessed for taxation at three hundred dollars or more, if the taxes have been paid unless under contest. By § 183, only persons qualified as electors can take part in any method of party action. By § 184, persons not registered are disqualified from voting. By § 185, an elector whose vote is challenged shall be required to swear that the matter of the challenge is untrue before his vote shall be received. By § 186,

the legislature. is to provide for registration after January 1, 1903, the qualifications and oath of the registrars are prescribed, the duties of registrars before that date are laid down, and an appeal is given to the county court and Supreme Court if registration is denied. There are further executive details in § 187, together with the above-mentioned continuance of the effect of registration before January 1, 1903. By § 188, after the last mentioned date applicants for registration may be examined under oath as to where they have lived for the last five years, the names by which they have been known, and the names of their employers."

It is apparent that paragraph 3 of section 180, permitting the registration of electors before 1903, of "all persons who are of good character and who understand the duties and obligations of citizenship under a republican form of government,". opened a wide door to the exercise of discretionary power by the registrars. It is charged that this section, in connection with section 181, permitting the registration of certain persons after January, 1903, was intended to be so carried into operation and effect that the negroes. of Alabama should be excluded from the elective franchise, and to permit the white men to register before January 1, 1903, and thus become electors, compelling the colored men to wait until after January 1, 1903, and then to apply under conditions which were especially framed and would have the effect to exclude the colored man from voting. It is charged that the registrars well knew the scheme and purpose set forth in the complaint to work the disfranchisement of negro voters and to qualify the white voters to exercise the elective franchise, and it is charged that the defendants were appointed by the State under sections of the state constitution adopted for the purpose of denying the colored man the right to vote and under which the defendants are undertaking to carry out the scheme and were so acting when they denied the right of the plaintiff to register, thus depriving him of the right guaranteed. to him by the first section of the Fifteenth Amendment to the Constitution of the United States. A consideration of the allegations of this complaint, to which the demurrer was sustained,

makes apparent that the Federal right for which the plaintiff sought protection and the recovery of damages was that secured by the amendment to the Federal Constitution, which prohibits a State from denying to the citizen the right of suffrage because of race, color or previous condition of servitude. But in the present case the state court has not sustained the right of the State to thus abridge the constitutional rights of the plaintiff. It has planted its decision upon a ground independent of the alleged state action seeking to nullify the force and effect of the constitutional amendments protecting the right of suffrage. The first ground of sustaining the demurrer is, in effect, that, conceding the allegations of the petition to be true, and the registrars to have been appointed and qualified under a constitution which has for its purpose to prevent negroes from voting and to exclude them from registration for that purpose, no damage has been suffered by the plaintiff, because no refusal to register by a board thus constituted in defiance of the Federal Constitution could have the effect to disqualify a legal voter, otherwise entitled to exercise the elective franchise. In such a decision no right, immunity or privilege, the creation of Federal authority, has been set up by the plaintiff in error and denied in such wise as to give this court the right to review the state court decision. This view renders it unnecessary to consider whether, where a proper case was made for the denial of the right of suffrage, it would be a defence for the election officers to say that they were acting in a judicial capacity where the denial of the right was solely because of the race, color or previous condition of servitude of the plaintiff. In the ground first stated we are of opinion that the state court decided the case for reasons independent of the Federal right claimed, and hence its action is not reviewable here.

In the case for a writ of mandamus the same attack was made upon the action of the State of Alabama in adopting and enforcing the provisions of the state constitution which it was charged were adopted for the purpose of disfranchising the negroes and permitting white men only to exercise the elective

franchise. · In the mandamus case the decision of the state court was :

"The petition in this case is for a writ of mandamus to compel the board of registrars for Montgomery County to register the petitioner as an elector. It alleges that sections 180, 181, 183, 184, 185, 186, 187 and 188 of art. VIII of the constitution of 1901, fixing the qualifications of electors and prescribing the mode of registration, are unconstitutional because violative of the Fourteenth and Fifteenth Amendments of the Constitution of the United States. The prayer is in substance that these sections of the constitution above enumerated be declared null and void, and that an alternative writ of mandamus issue to the board of registrars commanding them to register as a qualified elector of the State of Alabama, upon the books provided therefor, the name of petitioner and to issue to him a certificate of the fact in disregard of said sections of the constitution, etc.

"As these sections of the constitution assailed created the board of registrars, fixed their tenure of office, defined and prescribed their duties, if they are stricken down on account of being unconstitutional, it is entirely clear that the board would have no existence and no duties to perform. So then, taking the case as made by the petition, without deciding the constitutional question attempted to be raised or intimating anything as to the correctness of the contention on that question, there would be no board to perform the duty sought to be compelled by the writ and no duty imposed of which the petitioner can avail himself in this proceeding, to say nothing of his right to be registered.—Affirmed." 136 Alabama, 228.

We do not perceive how this decision involved the adjudication of a right claimed under the Federal Constitution against the appellant. It denies the relief by way of mandamus, admitting the allegations of the petition as to the illegal character of the registration authorized in pursuance of the Alabama constitution.

This is a ground adequate to sustain the decision and wholly independent of the rights set up by the plaintiff as secured to him by the constitutional amendments for his protection.

The plaintiff in error relies upon two cases adjudicated in
this court, *Wiley* v. *Sinkler*, 179 U. S. 58, and *Swafford* v.
*Templeton*, 185 U. S. 487. In the former it was held that an
action may be sustained in a court of the United States against
election officers for refusing the plaintiff's vote for member
of Congress. The allegations of the complaint are set forth
in full in the statement of the case, and it appears that the
board of managers were averred to be legally qualified to pre-
side at the Federal election, and as such wrongfully refused
the proffered vote of the plaintiff, a duly qualified elector,
willfully and without legal excuse. It was held that the com-
plaint was defective for not averring that the plaintiff was a
duly registered voter. It appeared that the registration law
had not been held unconstitutional, and it further appeared
that if such was the fact plaintiff was not in a position to im-
pugn its constitutionality. In *Swafford* v. *Templeton*, it was
held that the Circuit Court erred in dismissing for want of juris-
diction an action kindred to that sustained in *Wiley* v. *Sinkler*,
wherein the plaintiff was denied the right to vote for member
of. Congress, which was held to have its foundation in the
Constitution of the United States, with consequent jurisdiction
in a Federal court to redress a wrongful denial of the right.
Neither of these cases is in point in determining our right
to review the action of the state court in the case now before
us. It is apparent that the thing complained of, so far as it
involves rights secured under the Federal Constitution, is the
action of the State of Alabama in the adoption and enforcing
of a constitution with the purpose of excluding from the exer-
cise of the right of suffrage the negro voters of the State, in
violation of the Fifteenth Amendment to the Constitution of
the United States. The great difficulty of reaching the politi-
cal action of a State through remedies afforded in the courts,
state or Federal, was suggested by this court in *Giles* v. *Harris*,
*supra*.

In reaching the conclusion that the present writs of error
must be dismissed the court is not unmindful of the gravity of
the statements of the complainant charging violation of a
constitutional amendment which is a part of the supreme law

of the land; but the right of this court to review the decisions of the highest court of a State has long been well settled, and is circumscribed by the rules established by law. We are of opinion that plaintiffs in error have not brought the cases within the statute giving to this court the right of review.

*The writs of error in both cases will be dismissed.*

MR. JUSTICE McKENNA concurs in the result.

MR. JUSTICE HARLAN dissents.