JAMES M. SHAW, BY ETC., *v.* W. A. WOODRUFF, *et al.*\*

(*Nashville,* December Term, 1927.)

Opinion filed March 3, 1928.

1. HOMESTEAD. EXCEPTION. INSANE PERSON. CONTRACT.

As a general rule the contract of a lunatic may be avoided, but where a contract has been entered into in good faith, without fraud or imposition, for a fair consideration, without notice of the infirmity, and has been so far executed that the parties cannot be restored to their original positions, it will not be set aside by the court. (Post, p. 533.)

Citing: Bank v. Sneed, 97 Tenn., 123; Lincoln v. Buckmaster, 32 Vt., 652; Mathewson v. McMahon, 38 N. J. L., 536; 5 Lawson's Rights & Remedies, sec. 2389; 2 Pom. Eq. Juris., sec. 946; 32 C. J., 734; 14 R. C. L., 584; Ann. Cas. 1914 D, 867-868.

2. CONTRACTS. LUNATIC. ESTOPPEL.

The rule that contracts entered into by a lunatic where such contract has been entered into in good faith, without fraud or imposition, for a fair consideration, without notice of the infirmity, and has been so far executed that the parties cannot be restored to their original rights, cannot be set aside as void upon the doctrine of equitable estoppel which was devised by courts of equity to prevent injustice and is based on the ground of public policy and good faith. (Post, p. 534.)

Citing: 21 C. J., 1117.

3. CONSTITUTIONAL LAW. COURTS OF EQUITY.

Courts of equity are without power to prescribe and enforce rules that conflict with or are repugnant to the Constitution. (Post, p. 534.)

4. **HOMESTEAD EXEMPTION. ALIENATION. CONSTITUTION.**

The only manner by which the homestead may be charged or conveyed (with the exceptions named in the Constitution), is "by joint consent" of the husband and wife. (Post, p. 534.)

Citing: Article 11, sec. 11, State Constitution.

5. **HOMESTEAD. ALIENATION. JOINT CONSENT. INSANITY.**

In applying the restrictive provisions of the Constitution, the rule requiring joinder or consent of husband and wife to a conveyance or encumbrance to a homestead applies with full force and effect in case one of the two spouses is insane, the homestead laws making no exception in cases of insanity, and the courts having no power to do so. (Post, p. 534.)

Citing: Thompson v. New England Mortg. Security Co., 110 Ala., 400; Singleton v. National Land Co., 183 Iowa, 1108, 167 N. W., 97; Ballenger v. Lester, 113 Ky., 96, 67 S. W., 266; Whitlock v. Gosson, 35 Nebr., 829, 53 N. W., 980; Heidenheimer v. Thomas, 63 Tex., 287.

6. **HOMESTEAD. ALIENATION. LIEN. ESTOPPEL.**

The homestead was not intended for the benefit of the husband alone, but for the benefit of the family; it is not within the power of the courts of this State to declare any indebtedness a lien on it; and where either spouse attempts to alienate the homestead without the joinder of the other, such other is not estopped thereby to assert his or her homestead rights in the property. (Post, p. 535.)

Citing: Hoge v. Hollister, 2 Tenn. (Chy., 606; Mash v. Russell, 69 Tenn. (1 Lea.), 543; 9 Ann. Cas., 14.

7. **HOMESTEAD. ALIENATION. JOINT CONSENT.**

Where the wife attached her signature to a mortgage and duly acknowledged its execution, but her name did not appear in the body of the instrument as a grantor, there was no joint consent. (Post, p. 536.)

Citing: Hoge v. Hollister, 2 Tenn. Chy., 606.

8. HOMESTEAD. CONSTITUTIONAL QUESTION. PLEADING. LUNATIC.

In a suit to protect the homestead rights of a lunatic the same strictness in pleading does not prevail as where all the parties are sui juris. A constitutional question may be raised at any time. (Post, p. 536.)

Citing: Gibson's Suits in Chancery, 2 Ed., 762.

9. PLEADING. CONSTITUTIONAL RIGHTS.

Where one of the exceptions to the report of sale is "the land was ordered sold in bar of the homestead rights of the complainant, and if the sale to W. A. Woodruff is affirmed complainant will be evicted from his own home," the question of selling complainant's homestead was called to the attention of the chancellor sufficiently to enable him to pass upon that question. (Post, p. 537.)

Distinguishing: Greeno v. Ellas, 1 Tenn. Chy. App., 165.

10. DEED OF TRUST. HOMESTEAD. PROPERTY OF LUNATIC. LIEN.

Where it appears that a lunatic received the benefits of the money realized from a trust deed a decree therefor is valid and may be declared a lien on all of his property except his homestead. (Post, p. 537.)

11. HOMESTEAD. TRUST DEED. ENFORCEMENT. LUNATIC.

Where it appears that the homestead of a lunatic has been sold to enforce a decree for foreclosure of a trust deed, the cause will be remanded and a writ of restitution will issue, and the Chancellor may appoint commissioners to set apart a homestead to the lunatic and decree a sale of the remainder of his property, as well as the reversionary interest in the homestead, or if preferred, the entire tract of land may be sold subject to the homestead rights of the complainant. (Post. p. 537.)

---

*Headnotes 1. Courts, 15 C. J., section 276; 2. Homesteads, 29 C. J., section 297; 3. Homesteads, 29 C. J., sections 273, 321; 4. Homesteads, 29 C. J., sectio n314; 5. Insane Persons, 32 C. J., section 631; 6. Constitutional Law, 12 C. J., section 217; 7. Appeal and Error, 3 C. J., section 767.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —Hon. HARRY A. LUCK, Special Judge.

R. L. SADLER, for Shaw.

W. F. CARPENTER, for Woodruff.

MR. JUSTICE McKINNEY, delivered the opinion of the Court.

James M. Shaw, referred to herein as complainant, by his next friend, filed the bill in this cause on March 14, 1927, for the purpose of having certain decrees entered in the cause of *James M. Shaw* v. *Arch Harper, Trustee,* reviewed and declared invalid.

The particular decree complained of, in part, was one entered on February 4, 1925. In that decree the court held void and set aside a deed of trust executed by complainant and his wife on December 22, 1921, on their homestead tract of land of sixty-two acres, and revested title in complainant, holding that complainant was insane when he executed said deed of trust, and had continued in that condition to the present time. The decree then recited:

"It is further ordered and adjudged by the Court, on application of the complainant, and by consent of the defendants T. G. Carver, Trustee, W. A. Sharpe & Co., W. A. Woodruff, Trustee, and Mrs. Margaret Busey, and their solicitor of record John H. DeWitt, that the defendant Margaret Busey is entitled to a lien and accordingly a lien is declared to exist in her favor upon the real property of complainant described in this decree, to secure the repayment of all moneys received by the

complainant J. M. Shaw and his wife, the defendant, Minnie Shaw, upon the faith of said trust deed, together with lawful interest thereon from December 22, 1921, to this date, which amount it is agreed is in the sum of $800 principal and the sum of $156 interest, in all the sum of $956.''

(1) It is this part of the decree that is objected to. Counsel for complainant insists that a lien cannot be fastened on the homestead of an insane person, even where it is assented to by the *non compos,* his next friend and his counsel; and that the decree complained of is invalid because it deprived complainant of a constitutional right.

Counsel for the defendants, in support of the decree, rely upon the rule announced by this court in *Bank* v. *Sneed,* 97 Tenn., 123, as follows:

''It is conceded that, as a general rule, the contract of a lunatic may be avoided. To this, however, there is this well-recognized exception, that where a contract has been entered into in good faith, without fraud or imposition, for a fair consideration, without notice of the infirmity, and has been so far executed that the parties cannot be restored to their original positions, it will not be set aside by the Courts. 5 Lawson's Rights & Rem., sec. 2389; 2 Pom. Eq. Juris., sec. 946.

''It is said that such a contract is enforced against the party *non compos mentis,* not so much upon the idea that it possesses the legal essential of consent, but rather because, by means of an apparent contract, he has secured an advantage or benefit which cannot be restored to the other party, and therefore it would be inequitable to permit him, or those in privity with him, to repudiate it. *Lincoln* v. *Buckmaster,* 32 Vt., 652; *Mathewson* v. *McMahon,* 38 N. J. L., 536.''

It may be said that the great weight of authority supports this rule. 32 C. J., 734; 14 R. C. L., 584; Ann. Cas. 1914 D, 867-868.

*(2)* This rule is founded upon the doctrine of equitable estoppel, which was devised by courts of equity to prevent injustice, and is based upon the grounds of public policy and good faith. 21 C. J., 1117.

*(3)* But even courts of equity are without power to prescribe and enforce rules that conflict with or are repugnant to the constitution.

*(4)* Article 11, section 11, of the State Constitution is in this language:

"A homestead in the possession of each head of a family and the improvements thereon, to the value, in all of one thousand dollars shall be exempt from sale under legal process during the life of such head of a family, to inure to the benefit of the widow, and shall be exempt during the minorty of their children occupying the same. Nor shall said property be alienated without the joint consent of husband and wife, when that relation exists. This exemption shall not operate against public taxes, nor debts contracted for the purchase money of such homestead, or improvements thereon."

It will be observed that the only manner by which the homestead may be charged or conveyed, with the exceptions named in the constitution, which have no application in this cause, is "by joint consent" of the husband and wife; and, under all of the authorities, there is no joint consent where either is insane.

*(5)* It follows that the general rule must be qualified where the homestead is involved, if either the husband or wife is insane.

In considering the restrictions with respect to the transfer or encumbrance of the homestead it is stated in 29 C. J., p. 893, section 274, as follows:

"In applying the restrictive provisions under discussion, the rule requiring joinder or consent of husband and wife to a conveyance or encumbrance of the homestead applies with full force and effect in case one of the two spouses is insane. The homestead laws make no exception in case of insanity and the courts have no power to do so."

The following cases are in point: *Thompson* v. *New England Mortg. Security Co.*, 110 Ala., 400; *Singleton* v. *National Land Co.*, 183 Iowa, 1108,. 167 N. W., 97; *Ballenger* v. *Lester*, 113 Ky., 96, 67 S. W., 266; *Whitlock* v. *Gosson*, 35 Nebr., 829, 53 N. W., 980; *Heidenheimer* v. *Thomas*, 63 Tex., 287.

*(6)* The following pertinent statements will be found in the opinion in *Withers* v. *Love* (Kan.), 3 L. R. A. (N. S.), 514:

"It (the homestead) was not intended for the benefit of the husband alone, but for the benefit of the family and of society, to protect the family from destitution and society from the danger of her citizens becoming paupers. . . .

"The term 'joint consent' has been construed with strictness and in favor of the homestead. . . .

"It has been said that it is not within the power of the courts in this State to declare any indebtedness a lien on a homestead."

Where a husband attempts to mortgage or alienate the homestead without the joinder of his wife neither the husband nor the wife is estopped thereby to assert his or her homestead right in the property. *Hoge* v. *Hollis-*

*ter,* 2 Tenn. Chy., 606; *Mash* v. *Russell,* 69 Tenn., 543; 9 Ann. Cas., 14.

*(7)* These cases seem to be applicable, at least upon principle, because joint consent is absent where the wife is insane as well as where she does not join in the conveyance.

In *Hoge* v. *Hollister,* the wife attached her signature to the mortgage and duly acknowledged its execution, but the court held there was no joint consent where her name did not appear in the body of the instrument as a grantor.

*(8)* It is argued for defendants that the question of homestead was raised in this court for the first time.

This does not affirmatively appear from the record. The pleadings are not so full and specific as they should have been, but in causes of disabled persons, whose interests are submitted to the court, the same strictness in pleading does not prevail as where all parties are *sui juris.*

Generally, a constitutional question may be raised at any time.

Mr. Gibson in his Suits in Chancery (2nd Ed.), p. 762, says:

"The Chancery Court delights to help those who cannot help themselves. . . .

"In short, the Chancery Court, acting *in loco parentis,* and as general guardian for minors, idiots, lunatics and persons of unsound mind, will do for them and their property, what they themselves would in all probability have done if possessed of good reason and good conscience."

*(9)* The principal question raised by the bill was the illegal sale of complainant's home and the purpose to dispossess him thereof.

One of the exceptions filed to the report of sale in *Shaw v. Harper, Trustee,* in which, pending the suit, Carver was substituted as trustee in the place of Harper, was in these words:

"The land was ordered sold in bar of the homestead rights of complainant, and if the sale to W. A. Woodruff is affirmed complainant will be evicted from his own home."

We are of the opinion, therefore, that the question of selling the complainant's homestead was called to the attention of the Chancellor sufficiently to enable him to pass upon that question. No opinion was filed in the cause, and we are, therefore, not advised as to the Chancellor's views of the matter.

*Greeno* v. *Ellas,* 1 Tenn. Chy. App., 165, by inference, at least, would appear to support the contention of the defendants. It will be noted, however, that in that cause the exception referred to above; that is, the inability of the court to fasten a lien upon the homestead, was not discussed or passed upon.

*(10)* In the consideration of this cause we have assumed that the complainant received the benefit of the $800 realized from the deed of trust, and that the decree for same is valid and a lien on all of his property except his homestead. In fact, no question is made as to this.

*(11)* For the reasons set forth above, the decree of the Chancellor will be reversed and the cause remanded. Upon the remand a writ of restitution will issue to place complainant in possession of the property. The Chan-

cellor may appoint commissioners to set apart a homestead to complainant, and then decree a sale of the remainder of the tract, as well as the reversionary interest in the homestead, to satisfy the decree of defendants; or, if preferred, the entire tract may be sold, subject to the homestead right of complainant.

The costs of the appeal will be taxed against defendants. The costs in the chancery court will be paid out of the proceeds of sale when made. The Chancellor will make all such orders and decrees as may be deemed necessary to effectuate the decree of this court and to do equity between the parties.

We have limited our statement to such facts as were considered necessary to a determination of the question involved.