WARD v. LOVELL et al.—113 S. W. (2d) 759.

Middle Section. January 2, 1937.

Petition for Certiorari granted by Supreme Court, July 3, 1937.

Decree Affirmed by Supreme Court, February 12, 1938.

E. L. McNeilly, of Nashville, for appellant.
Wm. C. Bowen, of Nashville, guardian ad litem.
Littell Rust, of Nashville, for appellees.

FAW, P. J. This suit was begun by an original bill filed in the chancery court of Davidson county, part II, on October 21, 1933. The relief sought by the bill was a decree adjudging that a certain deed of trust purporting to have been executed by Victoria Harris to Chas. F. Lovell, trustee, and certain notes purporting to have been executed by Victoria Harris to the Commerce-Union Bank (which deed of trust and notes will be hereinafter more particularly described) are null and void and that they be cancelled; that judgment be rendered against Commerce-Union Bank for the sum of $215 by reason of money paid to said bank from rentals of the property described in said deed of trust; that the Commerce-Union Bank and Chas. F. Lovell, trustee, be restrained from selling, or attempting to sell, the property described in said deed of trust, and that on final hearing said injunction be made perpetual; that complainant have judgment against Commerce-Union Bank and Chas. F. Lovell, jointly and severally, for the costs of the cause; and that complainant be given general relief.

The principal ground on which it was thus sought to have the aforesaid deed of trust and notes adjudged void and canceled was that said Victoria Harris is, and was, at the time of the purported execution of said notes and deed of trust, of unsound mind and not mentally capable of understanding or comprehending the true nature and effect of such transactions.

The case proceeded to a final decree on pleadings and proof, and the chancellor sustained the bill and adjudged that the aforesaid deed of trust and notes were and are null and void, and he decreed that they be canceled and removed as a cloud on the title of Victoria Harris to the property involved; but the chancellor found that the Commerce-Union Bank and Lovell, trustee, had paid out sums aggregating $1,074.82 for the manifest advantage and benefit of said Victoria Harris, in connection with the transactions involved in the case, which she in equity and good conscience is obligated to repay, and he declared said sum a lien on the property of Victoria Harris described in

the pleadings, and directed a sale of said property by the clerk and master of his court, unless said sum be paid in ninety days from the entry of said decree. A more specific statement of the details of said decree will be made later herein.

The "complainant" filed exceptions to certain specified parts of the aforesaid decree (same being those parts of the decree adverse to Victoria Harris) and moved for a new trial thereon, but said motion was overruled by the chancellor. Thereupon, the "complainant" excepted "to the action of the Court in overruling and disallowing the foregoing motion, and each several ground thereof," and prayed an appeal in the nature of a writ of error to this court, which was granted "upon complainant's giving bond as required by law, or taking the oath prescribed by law for poor persons, in lieu of bond." In due season, the oath prescribed for poor persons was filed by "Mrs. Emma H. Ward as next friend of Victoria Harris of unsound mind," stating that the affiant "has no property of the said Victoria Harris out of which to bear the expense of the appeal and the appeal in the nature of a writ of error," etc.

With the foregoing brief outline of the purpose and history of this suit in mind, we will now advert to a question arising on the record with respect to the jurisdiction of this court to entertain the appeal. Neither of the parties to the cause has questioned the jurisdiction of this court, but when a court is without jurisdiction any judgment it may render is a nullity, and "it is the duty of the court to determine the question of its jurisdiction on its own motion; and it will not ignore a want of jurisdiction because the question is not raised or discussed by either party." 3 C. J., p. 372, sec. 128. To same effect, see Barnett v. Kunkel, 264 U. S., 16, 44 S. Ct., 254, 68 L. Ed., 539; Smith v. Apple, 264 U. S., 274, 44 S. Ct., 311, 68 L. Ed., 678; Lewellen v. Lewellen, 319 Mo., 854, 5 S. W. (2d), 4; Tressler v. Whitsett, Mo. App., 280 S. W., 438; State ex rel. v. Hoffman, 313 Mo., 667, 288 S. W., 16; Toothaker v. Pleasant, 315 Mo., 1239, 288 S. W., 38, 41; Giles v. Teasley, 193 U. S., 146, 24 S. Ct., 359, 48 L. Ed., 655, 659.

The caption of the original bill filed in the chancery court is as follows:

"To the Honorable James B. Newman, Chancellor, holding the Chancery Court, Part II, for Davidson County, Tennessee:

"The Bill of Complaint of Mrs. Emma H. Ward, a citizen of Tennessee and a resident of Davidson County, who sues as next friend to Victoria Harris, a person of unsound mind, Complainant, against Charles F. Lovell, Trustee, and the aforesaid Victoria Harris, each a citizen of Tennessee and a resident of Davidson County; and the Commerce Union Bank, a corporation organized, existing and carrying on business under and in virtue of the laws of Tennessee, with

its principal office and place of business in the City of Nashville of the County and State aforesaid, Defendants."

It is stated in the bill that "the names, citizenship and residence of the complainant and the defendants hereunto are as stated in the foregoing caption."

It is then alleged that "the defendant Victoria Harris is a person of unsound mind, . . . although she has not been formally adjudged insane; and she is without regularly appointed guardian or trustee," and that "she is about thirty-five years of age."

It appears from the bill and the entire record that Mrs. Emma H. Ward neither has nor claims any personal interest in the cause of action alleged in the pleadings, but is asserting the right to sue only "as next friend of Victoria Harris." Such suit should have been in the name of Victoria Harris, described as suing by her next friend, etc. 14 Ency. Pl. & Pr., pp. 1049, 1050; Gibson's Suits in Chancery, 2d Ed., sec. 156.

"A suit by a next friend must be brought in the name of the infant or non compos, since it is the latter, and not the next friend, who is the real and proper party. The next friend is neither technically nor substantially a party." Williams v. Gaither, 139 Tenn., 587, 589, 202 S. W., 917, 918; Morgan v. Potter, 157 U. S., 195, 15 S. Ct., 590, 39 L. Ed., 670, 671.

It has been held in a few cases from other jurisdictions that where a suit is brought by one suing as next friend of a person under disability, the form may be waived by failure to object, and the case may be tried as the suit of the person under disability suing by next friend. 14 Ency. Pl. & Pr., page 1050.

But, in the instant case, the complainant made Victoria Harris, the person under disability, a defendant to the bill, and prayed "that a guardian ad litem be appointed to appear and defend for the defendant Victoria Harris as a person non compos mentis." A subpoena to answer accordingly issued and was served upon Victoria Harris as a defendant to the original bill, and thereafter, on motion of "complainant," a guardian ad litem was appointed by the court to defend this suit for said Victoria Harris. The defendant Victoria Harris, by her said guardian ad litem, filed an answer to the original bill and thereby submitted her rights and interests in the matters averred in the bill to the protection of the court; and she also filed a similar answer, by her guardian ad litem, to the cross-bill filed by the Commerce-Union Bank and Chas. F. Lovell, trustee.

"Exceptions" to the final decree of the chancery court were filed by "complainant," and a motion for a new trial, based on said exceptions, was filed by "complainant;" but said motion was overruled by the chancellor, and the record then recites that, "To the action of the Court in overruling and disallowing the foregoing motion, and

each several ground thereof, complainant excepts and prays an appeal, in the nature of a writ of error, to the Court of Appeals sitting at Nashville, present term of said Court, upon complainant's giving bond as required by law, or taking the oath prescribed by law for poor persons, in lieu of bond; and thirty days from May 21, 1935, are allowed complainant for presenting a bill of exceptions, executing said bond or taking said oath, and otherwise perfecting her said appeal.''

Mrs. Emma H. Ward filed an oath in lieu of an appeal bond, as follows:

''Mrs. Emma H. Ward, next friend to Victoria Harris,
vs. Chas. F. Lovell, Trustee, et als.
Rule No. 46769.

''Mrs. Emma H. Ward, as next friend of Victoria Harris of unsound mind, makes oath that she has no property of the said Victoria Harris, out of which to bear the expense of the appeal and the appeal in the nature of a writ of error, to the present term of the Court of Appeals sitting at Nashville, prayed, for and on behalf of the said Victoria Harris, from the final decree in the above entitled cause, on April 22, 1935, and May 17, 1935, (entered in Minute Book No. 31, pages 74 and 163, respectively), and on May 17, 1935, (entered in Minute Book No. 31, page 164), and that she verily believes the said Victoria Harris is justly entitled to the redress sought by the said appeal and appeal in the nature of a writ of error.

''Mrs. Emma H. Ward.

''Sworn to and subscribed before me, this 18th day of June, 1935. J. C. Dale, Jr. D. C. and M.''

No bond or oath was filed, except the oath of Mrs. Emma H. Ward, above quoted.

It is seen that, on the face of the record, the appeal was prayed by and granted to the ''complainant.'' If we say that the form in which the complainant is described in the bill will be disregarded, and the suit be treated as the suit of Victoria Harris, suing by her next friend, Mrs. Emma H. Ward, we will have the anomalous situation of Victoria Harris occupying the positions of complainant and defendant in the same bill.

In the bill, Victoria Harris is described as defendant, and she was brought before the court as such, and, as a person of unsound mind, she was recognized as a ward of the court, and, on motion of the ''complainant,'' the court appointed a guardian ad litem to represent her in the suit. In this situation, did the ''complainant,'' who was ''neither technically nor substantially a party,'' have the right to appeal from a decree adverse to the non-compos, or was it for the guardian ad litem to pray, obtain, and perfect an appeal in the name of his ward, if in his judgment he thought it proper to do so?

■ Although entertaining grave doubts of the soundness of our conclusion, we have decided to entertain this appeal upon the assumption that the chancellor treated the appeal as prayed by Victoria Harris, and that he so granted the appeal—treating the word "complainant" as descriptive of the real party in interest.

If the suit be treated as the suit of Victoria Harris, by her next friend Emma H. Ward, the oath for appeal was in substantial conformity with the statute, Code, section 9081, which provides that, "Except for false imprisonment, malicious prosecution, and slanderous words, the next friend or any person who has been appointed by any court guardian or guardian ad litem of any idiot, lunatic, person of unsound mind, or infant, may commence and prosecute an action, suit or cross suit or appeal without giving bond or security for costs, by taking and subscribing an oath that he has no property of such idiot, lunatic, person of unsound mind, or infant, out of which to bear the expense of such action, and that he verily believes that such idiot, lunatic, person of unsound mind, or infant is justly entitled to the redress sought; nor shall such guardian or guardian ad litem incur any personal liability for such action, unless the court shall find that the step was not taken in good faith."

The findings and opinion of the learned chancellor are embodied in his decree, and we think that the material and determinative issues of fact and law presented by the pleadings are therein pointed out. It is, therefore, unnecessary to extend this opinion by a preliminary statement of the contents of the pleadings. The decree of the chancery court (which, as stated, includes the chancellor's findings and opinion) is as follows:

"This cause came on to be heard before Chancellor James B. Newman, April 22, 1935, and former days of the term upon the pleadings, exhibits, depositions, testimony of witnesses examined in open court in pursuance of an agreement signed by the solicitors for all the parties filed in this case January 16, 1935, waiving the jury and consenting to a hearing on oral testimony, and argument of solicitors.

"From all of which the court finds:

"That Victoria Harris is the owner of the property described in the pleadings and the deed of trust involved in this case which was devised to her by her stepgrandfather, Judge E. H. East. Victoria Harris is about thirty-five years old, and since the death of her mother has resided with her aunt, Mrs. Emma H. Ward, and Mrs. Ward's husband, Gus Ward, up to the time of his death. She has very little education above the third grade, and at the age of eleven years was sent to a school for children mentally backward. She is unable to count money or tell the difference between a quarter and fifty cents, and, when sent on an errand to a grocery store to make purchases, has not sufficient mental faculties to remember the things

that she is sent to purchase. She was devotedly attached to her uncle, Gus Ward, during his lifetime and would sign any paper he requested her to sign, or do without question anything he suggested.

"At the time the deed of trust and the notes which were secured thereby were executed in August, 1931, and since said date to the present, she had had the mind of a child of from seven to eight years of age; the proof showing that her mind during the whole period of her life has never progressed beyond the mind of a child seven or eight years old. She had no intelligent comprehension of the act she was performing when she executed the deed of trust and the notes involved in this case. She was mentally incapable of performing these acts understandingly, or to have any intelligent comprehension of what she was doing.

"Gus Ward, her uncle, was a stepson of Judge E. H. East who was a prominent and distinguished citizen of Nashville, and by reason of the prominence of this family when Mr. Ward was convicted and sent to the penitentiary for forgery, this fact became well and generally known in Nashville where Judge East resided.

"Ward made application for the loan involved to the defendant bank, and it prepared the deed of trust and the notes and delivered them to Ward for execution by Victoria Harris. Ward, or the attorney he employed to represent Victoria Harris in having the title to this property determined as vested in her absolutely, furnished to the bank the items that were to be paid out of this loan of $2,500 and the bank paid all of these items. Among the items furnished by Ward to be paid out of this fund, was a balance of $604.50 due Thos. W. Wrenne & Co. on a loan to Ward which was originally about $1,200, and which was secured by the indorsement of W. S. Anderson. This note for $604.50, signed by Ward and his wife and indorsed by W. S. Anderson, was paid by the check of the defendant bank which purported on its face to be "For Victoria Harris—Release of appeal." The record discloses that Anderson, who was a defendant to the petition filed to remove the alleged cloud on the title of Victoria Harris, and of which the defendant bank and Lovell, trustee, had notice, withdrew his appeal on condition that this note would be paid out of the proceeds of the loan Ward had procured on the property involved. After making this payment and paying certain expenses and costs incident to making the loan and for the execution and recording of the papers, and the taxes on the property, and insurance premium, there was left a balance of $696.45 on the loan of $2,500 negotiated by Ward, and the bank issued its check payable to Victoria Harris for $696.45 and delivered it to Mr. Ward, and this check was indorsed by the attorney Ward had employed to represent Victoria Harris, and deposited to his credit and he issued a check for $586.70 to Victoria

568

Harris and delivered it to Gus Ward, and Ward deposited this check to his credit as "Gus Ward, Agent."

"The difference between the check to Victoria Harris of $696.45 and the check delivered by the attorney to Ward of $586.70, was caused by the attorney deducting his fee of $100 out of the first check, and $9.75 of accrued costs incident to the filing of the petition in the case of Burton vs. Anderson. The deposit made to Ward's credit as agent of $586.70 was checked out by him and used in the payment of debts for which he was primarily liable, and on notes to which he had forged the name of Victoria Harris, as well as that of his wife, and other small accounts that Victoria Harris was not liable for.

"All of the expenditures and deductions made by the bank from this loan of $2,500 were either caused by the negotiation of this loan or were for the benefit of Ward with whom the bank dealt in this case, except the item of city taxes for the years 1926 to 1931, inclusive, without penalties, amounting to $617.50, and state and county taxes for the years 1927 to 1930, inclusive, amounting to $364.80 and $2.75 costs of the tax suits, and except the two items hereinafter mentioned. The state and county taxes were paid without any penalties. The total amount of these taxes and said costs is $985.05, and they were paid about August 24, 1931, by the defendant bank.

"Victoria Harris did not employ the attorney who represented her, but he was employed by Ward, nor did this attorney see or talk with her before the loan was closed and the money paid out, nor did she make application to or negotiate with the bank personally for this loan, but all of these transactions were handled through Ward, an ex-convict, and the bank had knowledge of the fact that he was using a part of this money to pay off his personal indebtedness to Wrenne & Co. and release his surety, Anderson, thereon before the execution of this deed of trust, and knew that these proceeds would be so used before making any distribution of the money loaned to Victoria Harris, and these were such circumstances as a reasonable and prudent person would have been put upon inquiry to make an investigation as to whether this loan was authorized by Victoria Harris, and such an investigation would have led to the discovery of her mental condition and incapacity to execute the deed of trust and notes.

"Victoria Harris never personally handled a cent of the loan of $2,500 that the bank made through Gus Ward to her, but all of this money was paid out by the bank or by Gus Ward, and the only portions of it that she received any benefit from on her property were the taxes, city, state, and County, $985.05, which were a lien thereon; and the item of $80 for treatment for termites in her house which the proof shows was a necessary repair; and the premium on the insurance on her house of $33, making a total of $1,098.05. As stated, all the other items of expenditure under this loan were either made by

reason of the loan being negotiated or on debts that Ward or his wife were primarily liable, and for which Victoria Harris was not in law liable.

"In August, 1933, the defendant bank and Lovell, trustee, claimed to exercise the right of entry and notified the rental agent of Mrs. Ward that he must account to the defendant bank for the rents. Mr. Lurry was the rental agent employed by Mrs. Ward to rent the property of Victoria Harris involved in this case, and he was authorized by her to rent the property, and, after deducting his commission and the costs of necessary repairs, to pay the balance over to Mrs. Ward with whom Victoria Harris was living, and this arrangement had been in existence some time when the defendants bank and Lovell, trustee, notified Mr. Lurry they were going to exercise the right of entry and for him to account to them for the rent.

"After this notice was given in August, and on October 21, 1933, the bill in this case was filed praying for cancellation of the deed of trust and notes, and for an injunction, and on notice an injunction was granted restraining the defendants bank and Lovell, trustee, from selling or undertaking to sell or in anywise attempting to sell the property involved. This order was made October 21, 1933.

"The cross-bill in the case filed by the defendant on November 28, 1933, prays for the appointment of a receiver to take possession of the property involved, collect the rents, and pay all taxes and insurance therefrom. Solicitors for the parties stated in open court that after the filing of the cross-bill solicitors for the complainant and the defendant entered into an oral agreement that the agent who had been renting the property, Mr. Lurry, might rent the property involved and apply the rents to the taxes that were due and unpaid, and to the costs of insurance. Mr. Lurry has handled the property since the notice was given to him by defendant bank in August, 1933, just as he handled it for Mrs. Ward, and has not been guilty of any neglect in the handling of this property as an agent. He had paid the net rents to the bank, and they have applied those rents to the unpaid taxes on this property that have accrued since the execution of the mortgage, and have a balance in their hands of $14.96. The improvements made by Mr. Lurry and deducted from the rents were necessary and proper for the preservation of the property involved.

"The court is of opinion that the complainant on this state of the facts is not entitled to recover the rent stipulated in the deed of trust, as a reasonable rental of the property or any rent other than as collected and accounted for by Mr. Lurry.

"The deed of trust and notes which Victoria Harris executed have no binding force because she was mentally incapable of executing these instruments, and the circumstances of their execution were such as

to put the defendants bank and Lovell, trustee, upon notice of her mental condition.

"The deed of trust and notes must be canceled and for nothing held as prayed.

"The record discloses that these taxes paid by the defendants bank and Lovell, trustee, were a lien on her property, and the discharge of this lien was for her benefit, and that the payment of the premium on the insurance was for the protection and benefit of the property, as well as the debt paid to the Terminix Company for necessary work done on her house.

"A court of chancery, out of consideration of right and justice on this state of facts, will apply the principle that a person having gotten property or money of another ought not in good conscience retain it freed of obligations to respond, and will require her to respond for these items paid by defendants bank and Lovell, trustee, that were for her manifest advantage and benefit. But the complainant is entitled to recover as next friend for the three interest notes of $75 each which have been paid to the defendant bank as holder of the trust deed aforesaid, and amounting to $225, paid out of the rental of the property of Victoria Harris, except $10 which was paid out of funds belonging to Mrs. Ward.

"It is therefore ordered, adjudged, and decreed by the court:

"(a) That the deed of trust and the notes given to secure it, described in the pleadings, be and are declared null and void, canceled, for nothing held, and removed as a cloud on the title of Victoria Harris to the property involved.

"(b) That the said indebtedness of $1,098.05, with interest thereon from August 24, 1931, to date, amounting to $241.56, making a total of $1,339.61, less the amount paid on the interest notes of $215, with interest thereon from August 15, 1932, to date, amounting to $34.83, and less the balance of $14.96, proceeds of rent in the hands of defendant bank, making a total of $264.79, and thereby leaving a balance due the defendants bank and Lovell trustee, of $1,074.82, for which said sum a lien is declared upon the property of Victoria Harris described in the pleadings, and unless said sum is paid within ninety days from the entry of this decree the clerk and master is authorized and directed, after advertising said property according to law, to sell the same to the highest and best bidder for cash, at the south door of the courthouse, Nashville, Tenn., and apply the proceeds first to the costs and expense of the sale, second, to the payment of said sum of $1,074.82, and any balance remaining he will pay to the guardian of Victoria Harris.

"The costs of the cause, including a fee of $150 to William C. Bowen, guardian ad litem, will be paid by the defendants bank, and Lovell, trustee, for which let execution issue. On application of E. L.

McNeilly, Esquire, solicitor for the complainant, a lien is hereby declared in his favor for a reasonable fee on the property herein involved secondary to the lien hereinabove given defendants bank and Lovell, trustee.''

The Commerce-Union Bank and Chas. F. Lovell, trustee, prayed, and were granted, an appeal from the foregoing decree, but did not perfect their appeal.

The appellant's assignments of error are that the chancellor erred:

(1) In denying and overruling complainant's motion, made at the conclusion of the hearing of all the evidence, as follows:

''Complainant moves the Court for judgment against defendants Lovell, Trustee, and Commerce-Union Bank, for the entire relief sought in the prayer to her original and amended bill; and for a decree dismissing the cross-bill of these defendants, denying any relief whatever thereon.''

(2) In decreeing ''a balance due the defendants Bank and Lovell, Trustee, of $1074.82, for which said sum a lien is declared upon the property of Victoria Harris described in the pleadings. . . . (and) . . . unless said sum is paid within ninety days . . . the Clerk and Master is authorized and directed . . . to sell the same.''

(3) ''In not rendering judgment in favor of complainant for the benefit of Miss Victoria Harris, against defendants Bank and Lovell, Trustee, for the sum of $196.40 instead of only $14.96, (credited upon the total of items adjudged in favor of defendants, and charged a lien —leaving as a balance the aforesaid $1074.82—upon Miss Harris' property) received by them or their agent, Mr. Lurry, from rents yielded by Miss Harris' property; and in allowing credits to defendants for their unauthorized expenditures for repairs to the property and expenses incurred by them in connection with renting it, whereby said $196.40 was reduced to said $14.96.''

(4) ''In ordering a sale of Miss Harris' property, if the aforesaid $1074.84 were not paid.''

(5) ''In ordering such sale to be made for cash.''

(6) ''In decreeing the lien upon the property involved, of complainant's solicitor, for his services in the instant suit, subordinate to the lien decreed to defendants Bank and Lovell, Trustee, upon the property for $1074.82.''

The questions presented by the foregoing assignments of error will be disposed of in the order which seems to us most convenient, rather than in the order of their assignment.

It will be observed that the chancellor adjudged that the deed of trust and notes which Victoria Harris executed have no binding force because she was mentally incapable of executing these instruments, and the circumstances of their execution were such as to put the de-

fendants bank and Lovell, trustee, upon notice of her mental condition; and thereupon decreed that the deed of trust and the notes given to secure it, described in the pleadings, be and are declared null and void, canceled, for nothing held, and removed as a cloud on the title of Victoria Harris to the property involved.

This was a grant of the relief sought by the original bill, and from this there was no appeal, and no error is assigned thereon.

But the chancellor adjudged and decreed that, as a condition of the grant of the relief thus sought, the court would require the repayment to the defendant Commerce-Union Bank and Lovell, trustee, of certain sums paid by them (as a part of the loan transaction in question) for the benefit of the property of Victoria Harris described in the pleadings.

The chancellor held that the condition just stated would be imposed for the reason that "A court of chancery out of consideration of right and justice on this state of facts, will apply the principle that a person having gotten property or money of another, ought not in good conscience retain it freed of obligation to respond, and will require her to respond for these items paid by defendants Bank and Lovell, Trustee, that were for her manifest advantage and benefit." This was (and was clearly intended to be) an application of the maxim that "he who seeks equity must do equity."

This is one of the maxims out of which has been developed the entire system of "Equity jurisprudence by a process of natural evolution." Gibson's Suits in Chancery, 2d Ed., sec. 31.

"In general, whenever a complainant seeks to recover property from which the defendant has removed an incumbrance, or to the value of which the defendant has added in good faith, relief will be granted the complainant only on condition that the defendant be reimbursed to the extent the complainant has been by him benefited.

"It will thus be seen that, in giving the complainant relief, a Court of Chancery will require of him whatever the defendant may, in good reason and good conscience, be entitled to in reference to the subject-matter of the suit, although this requirement may be one the Court would not otherwise enforce. The condition thus imposed on the complainant is, as it were, the price of the decree the Court gives him. Under this maxim, an equitable right may be secured to the defendant which could not be obtained by him in any other manner—which he could not have secured by a suit brought for that purpose. The equity the complainant is required to do must, however, be connected with the subject-matter of the suit, or grow out of the very controversy before the Court; and conditions must not be arbitrarily imposed.

"The principle contained in this maxim enlarges the powers and jurisdiction of the Court when equities arise, in favor of the defend-

ant, out of the subject-matter of the controversy; and hence, this might be termed a jurisdictional maxim. It, also, enables the Chancellor to determine the whole controversy in all its branches, and, if necessary, to make a sort of equitable compromise decree, giving to each party what, in good reason and good conscience, he ought to have; and requiring of each what, in good reason and good conscience, he ought to do.'' Gibson's Suits in Chancery, 2d Ed., sec. 39.

With reference to the maxim, ''he who seeks equity must do equity,'' Pomeroy says:

''The meaning is, that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims, and demands justly belonging to the adversary party, and growing out of or necessarily involved in the subject-matter of the controversy. It says, in effect, that the court will give the plaintiff the relief to which he is entitled, only upon condition that he has given, or consents to give, the defendant such corresponding rights as he also may be entitled to in respect of the subject-matter of the suit. This meaning of the principle was more definitely expressed by an eminent judge in the following terms: 'The court of equity refuses its aid to give to the plaintiff what the law would give him if the courts of common law had jurisdiction to enforce it, without imposing upon him conditions which the court considers he ought to comply with, although the subject of the condition should be one which the court would not otherwise enforce.' '' 1 Pom. Eq. Juris., 4th Ed., sec. 385, pp. 714, 715. Again, in section 388 of the same volume it is said:

''With this explanation of its scope and meaning, it may be regarded as a universal rule governing the court of equity in the administration of its remedies, that whatever may be the nature of the relief sought by the plaintiff, the equitable rights of the defendant, growing out of or intimately connected with the subject of the controversy in question, will be protected; and for this purpose the plaintiff will be required, as a condition to his obtaining the relief which he asks, to acknowledge, admit, provide for, secure, or allow whatever equitable rights (if any) the defendant may have, and to that end the court will, by its affirmative decree, award to the defendant whatever reliefs may be necessary in order to protect and enforce those rights. This principle is not confined to any particular kind of equitable rights and remedies, but pervades the entire equity jurisprudence, so far as it is concerned with the administration of equitable remedies.''

See, also, to same effect, 10 R. C. L., page 392, par. 141, and 21 C. J., page 172, sec. 151.

One hundred years ago, in the case of Alexander v. Wallace, 10 Yerg., 105, 110, our Supreme Court said that "One of the best maxims of a court of chancery is, that 'he who seeks equity must do equity' "; and the principle embodied in this maxim has been applied and enforced in numerous reported cases in this state, among which we cite the following: McMinn v. Richmonds, 6 Yerg., 9, 20; Cooley v. Meeks, 10 Yerg., 141, 145; Smith v. Evans, 5 Humph., 70, 77; Elliott v. Cochran, 2 Sneed 468, 471; Coppedge v. Threadgill, 3 Sneed, 577, 584, 585; Wood v. Chilcoat, 1 Cold., 423, 430; Arrington v. Grissom, 1 Cold., 522, 525; Creed v. Scruggs, 1 Heisk., 590-592; Sporrer v. Eifler, 1 Heisk., 633, 636, 637; Martin v. Turner, 2 Heisk., 384, 389; Aiken v. Suttle, 4 Lea 103, 120; Campbell v. Bryant, 2 Shan. Cas., 146, 150; Bloomstein v. Brien, 3 Tenn. Ch., 55, 68; Sartain v. Dixie Coal & Iron Co., 150 Tenn., 633, 643-645, 266 S. W., 313.

█ A pleading by the defendant relying upon or invoking the maxim that "he who seeks equity must do equity" is not essential. Such relief is in the nature of a condition imposed upon the complainant, and not granted in response to an affirmative pleading by the defendant. Sartain v. Dixie Coal & Iron Co., supra, 150 Tenn., 633, at pages 644, 645, 266 S. W., 313; Anderson v. Binford, 2 Baxt., 310, 317.

"The principle [asking equity she must do equity] is none the less applicable where the transactions sought to be avoided are those of infants, lunatics, or married women—persons under disability." Aiken v. Sutttle, supra, 4 Lea, 103, at page 120.

In Elliott v. Cochran, supra, it was held that a sale of property of minors was void and communicated no title to the purchaser; but the court held that "the complainants [the minors] must be held bound to refund the purchase money paid by the defendant for the slaves, if it shall be made to appear that it was in whole or part, received by them, or appropriated to their use, or for their benefit."

█ And, in the instant case, it was proper to declare a lien on the land of Victoria Harris to secure the sum awarded to defendants bank and Lovell, trustee, as a condition of the relief granted to said Victoria Harris. Bloomstein v. Brien, supra, 3 Tenn., ch. 55, at page 68; Cooley v. Weeks, supra, 10 Yerg., 141, at page 145; Campbell v. Bryant, supra, 2 Shan. Cas., 146, at page 150; Aiken v. Suttle, supra, 4 Lea, 103, at page 121.

Much of the elaborate brief of learned counsel for appellant is devoted to an able and interesting discussion and analysis of an array of authorities relating to the doctrine of subrogation; but, as we have endeavored to point out, the chancellor's decree rests upon a wholly

different principle of equity jurisprudence, and authorities elucidating and applying the doctrine of subrogation are not applicable.

In appellant's brief much reliance seems to be placed upon the Tennessee cases of Old National Bank v. Swearingen, 167 Tenn., 529, 536, 72 S. W. (2d), 545; Walker v. Walker, 138 Tenn., 679, 200 S. W., 825; Bradshaw v. Van Valkenburg, 97 Tenn., 316, 322, 37 S. W., 88; and Motley v. Harris, 1 Lea, 577; but these cases all involved the doctrine of subrogation, and were expressly decided by the court upon a consideration and application of that doctrine.

The proof is undisputed that, as found by the chancellor, out of the $2,500 paid out by the bank on the loan involved in this case, the sum of $985.05 was applied to the payment of taxes on the property of Victoria Harris; $33 was paid for fire insurance premiums on said property; and $80 was paid for treating said property for termites. The proof is, that "had not the termites . . . been removed, the principal parts of the wooden construction of the house would have been practically destroyed within a comparatively short while."

We concur in the chancellor's findings that the aforesaid three items paid out by the bank were appropriated to the use and benefit of Victoria Harris, and we also concur in the chancellor's opinion that she (Victoria Harris) "cannot in good conscience retain it freed of the obligation to respond."

The chancellor allowed Victoria Harris a credit on the aforesaid sums thus charged against her property for $215 which had been paid to the defendant bank out of her funds as interest on the invalid notes; and a further credit of $14.96 received by the bank from rents of her property collected by A. G. Lurry, rental agent.

It is insisted, through the third assignment of error, supra, that Victoria Harris should have had a credit of $196.40, instead of $14.96, on account of rents collected by A. G. Lurry. On this point, the chancellor found as follows:

"The cross bill in the case filed by the defendant on Nov. 28, 1933, prays for the appointment of a receiver to take possession of the property involved, collect the rents and pay all taxes and insurance therefrom. Solicitors for the parties stated in open court that after the filing of the cross bill solicitors for the complainant and the defendant entered into an oral agreement that the agent who had been renting the property, Mr. Lurry, might rent the property involved and apply the rents to the taxes that were due and unpaid, and to the costs of insurance. Mr. Lurry has handled the property since the notice was given to him by defendant bank in August, 1933, just as he handled it for Mrs. Ward, and has not been guilty of any neglect in the handling of this property as an agent. He has paid the net rents to the bank, and they have applied those rents to the unpaid taxes on this property that have accrued since the execution of the

mortgage, and have a balance in their hands of $14.96. The improvements made by Mr. Lurry and deducted from the rents were necessary and proper for the preservation of the property involved.''

We concur in the chancellor's findings, above quoted, and in his conclusion thereon that the bank is chargeable only with $14.96 on account of the aforesaid rents.

It follows from what we have thus far said in this opinion that the criticisms of the chancellor's decree contained in the first three assignments of error are not well made, and these assignments are overruled.

The fourth assignment is that the chancellor erred ''in ordering a sale of Miss Harris' property if the aforesaid $1074.82 were not paid;'' and the fifth assignment is that the chancellor erred ''in ordering such sale to be made for cash.''

If, as we have held, it was competent for the court to declare a lien on the property of Victoria Harris to secure the aforesaid sum of $1,074.82, it follows that the court could order the property sold to satisfy such lien. In no other manner could the lien be made effective. Shaw v. Woodruff, 156 Tenn., 529, 538, 3 S. W. (2d), 167.

Inasmuch as the decree did not order the property sold in bar of the equity of redemption, it was competent for the court to order it to be sold for cash. Code, sec. 7736.

The fourth and fifth assignments of error are overruled.

The chancellor declared a lien on the property (of Victoria Harris) involved in this case for a reasonable fee for solicitor of complainant, but decreed that such lien should be secondary to the lien given defendants bank and Lovell, trustee, on said property.

Through the sixth assignment of error complainant is made of that part of the decree making said solicitor's lien subordinate to the lien in favor of the bank and Lovell, trustee.

The sixth assignment must be overruled. As against defendants bank and Lovell, trustee, complainant's solicitor can have no rights superior to his client in his client's property involved in this case. Blackburn v. Clarke, 85 Tenn., 506, 511, 3 S. W., 505.

In the brief for defendants bank and Lovell, trustee, it is said that, ''We desire to call to the attention of the Court the error of the Chancellor in taxing the fee of the guardian ad litem against the defendants as part of the costs;'' and authorities are cited for support of the proposition thus advanced.

But these defendants are not in a position to assign error on the record, as they did not perfect their appeal, and the appeal on behalf of Victoria Harris was a limited or special appeal from specified parts of the decree of the chancery court, and the remainder of that decree (including the order taxing the fee of the guardian ad litem against the defendants bank and Lovell, trustee, as part of the

costs) was unaffected by the appeal, and is not before this court for review.

It results that all of the assignments of error are overruled, and the decree of the chancery court is affirmed. The cause will be remanded to the chancery court of Davidson county, part II, for the enforcement of the decree by a sale of the property described in the pleadings, unless the aforesaid sum of $1,074.82, with interest thereon from the date of the decree below (April 22, 1935), and the costs of the appeal be paid within sixty days from the date of the decree of this court.

Crownover and DeWitt, JJ., concur.