# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### JANUARY 26, 2001 Session

## PATRICIA JOAN MORA v. GILBERTO RAMIREZ MORA

**Direct Appeal from the Chancery Court for Shelby County**
**No. D17028-3; The Honorable D. J. Alissandratos, Chancellor**

---

### No. W1999-02483-COA-R3-CV - Filed June 4, 2001

---

This case involves a dispute stemming from the parties' divorce in 1991. The divorce decree provided that Ms. Mora and the parties' adult daughter could live in the marital home for thirty months following the divorce, at which time the home was to be put on the market for sale and the proceeds divided. After the thirty month period expired, Mr. and Ms. Mora attempted to settle the dispute concerning the marital home. The parties each executed documents, and a dispute arose as to which document embodied the parties' intentions. The trial court ruled on the parties' settlement dispute, and the court also appointed Ms. Mora as the adult daughter's guardian and ordered that Mr. Mora provide support for his daughter. For the following reasons, we affirm in part and reverse in part.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Paul E. Lewis, Millington, for Appellant

Charlie R. Ashford, Memphis, for Appellee

## OPINION

### Facts and Procedural History

This case began in the trial court with the filing of a complaint for separate maintenance by Patricia Joan Mora (Ms. Mora) on October 14, 1988. The trial court entered a decree of separate maintenance, award of support, and division of marital property on July 10, 1990. The court's order provided that Ms. Mora and Pamela Mora, the parties' disabled adult daughter, were to stay in the family home for thirty months beginning July 1, 1990. After thirty months, the residence was to be put on the market for sale. The trial court's order also provided that Mr. Mora would pay Ms. Mora

rehabilitative alimony in the amount of $500.00 per month for a period of sixty months. The trial court's order granting a final decree of divorce was filed on September 6, 1991.

Gilberto Ramirez Mora (Mr. Mora) filed a petition for *scire facias* and modification in the trial court on October 14, 1993. Mr. Mora alleged that Ms. Mora had not complied with the terms of the final decree because she continued to reside in the marital home without placing the home on the market for sale. As a result, Mr. Mora alleged that he was suffering financially since he was to receive one half of the proceeds from the sale of the marital home. The parties eventually attempted to settle the matter on their own.

In their attempt to settle the matter concerning the marital home, the parties each signed agreements. Mr. Mora signed an agreement prepared by Ms. Mora's attorney that purported to settle all matters in controversy regarding the marital home. Mr. Mora also drafted an agreement, without the assistance of counsel, that Ms. Mora signed. Mr. Mora claims that his document settles not only the claims regarding the marital home, but all future court proceedings between the two parties concerning child support, child custody, contempt petition, modification of rehabilitative alimony, and any and all other matters.

Ms. Mora filed a Petition to Enforce Settlement Contract on January 8, 1997, to settle the dispute as to which document embodied the parties' agreement. The trial court accepted Ms. Mora's agreement and rejected Mr. Mora's agreement.

At a later hearing, the trial court also ruled on Ms. Mora's petition for custody, support, and fees regarding the parties' forty-five year old disabled child. After examining doctors' reports and hearing testimony from the parties and the guardian ad litem, the trial court concluded that the parties' adult child was permanently impaired and could not reasonably care for or support herself. The court also appointed Ms. Mora as Guardian of the Person and the Estate of Pamela Mora, and ordered Mr. Mora to contribute support for his adult daughter.

Mr. Mora appeals and raises the following issues, as we perceive them, for our review:

1) Whether the trial court erred in assuming jurisdiction to enforce a settlement contract of the parties after the divorce decree had been entered.
2) Whether the trial court erred in accepting the Appellee's agreement as valid and rejecting the Appellant's agreement.
3) Whether the trial court erred in assuming jurisdiction for custody and support of the parties' adult child.
4) Whether the trial court erred in finding the parties' adult child to be totally and permanently disabled.
We will examine each issue in turn.

**Standard of Review**

When a civil action is heard by a trial judge sitting without a jury, our review of the matter is *de novo* on the record, accompanied by a presumption of correctness of the findings below. See Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988); T.R.A.P. 13(d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. See Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's conclusions that are based on undisputed facts. See NCNB Nat'l Bank v. Thrailkill, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

**Law and Analysis**

First, Appellant claims that the trial court erred in assuming jurisdiction to enforce a settlement contract of the parties after the divorce decree had been entered. The parties were attempting to settle their differences regarding the marital home. The trial court had ordered in the divorce decree that Ms. Mora and the parties' disabled adult daughter could live in the marital home for a period of thirty months. After the thirty month period, Ms. Mora was to sell the home and divide the proceeds with Mr. Mora. Apparently, Ms. Mora did not place the marital home on the market for sale upon the expiration of the thirty month period. As a result, the parties attempted to settle their differences. As part of this settlement attempt, the parties each signed documents purporting to settle their differences regarding the marital home. When a dispute arose as to which document embodied the parties' agreement, Ms. Mora filed a Petition to Enforce Settlement Contract. The trial judge determined that Ms. Mora's agreement was the valid agreement. Mr. Mora cites Penland v. Penland, 521 S.W.2d 222 (Tenn. 1975), and he argues that the trial court erred in assuming jurisdiction to determine which settlement contract to enforce because the parties' agreement was contractual in nature and was not subject to the court's jurisdiction. We do not read Penland to stand for such a proposition. We find that the trial court had jurisdiction to enforce the settlement contract entered into by the parties in this particular case. The jurisdiction of a trial court in a divorce proceeding must continue until the final disposition of the marital property. To hold otherwise would strip the trial courts of jurisdiction to enforce common orders, such as the one in the case at bar, allowing a party to reside in the marital home for a specified period before the home is sold and the proceeds are divided.

Next, Appellant claims that the trial court erred in accepting Ms. Mora's agreement as valid and rejecting Mr. Mora's agreement. As noted above, both parties entered into settlement agreements concerning the marital home. The document drafted by Mr. Mora stated in part that "[u]pon the transfer and settlement of my half of the home at 8502 Quito Rd, to Patricia Mora all future court pending hearings have been resolved and dropped by the two parties." Mr. Mora claims that his document dismisses not only the claims regarding the marital home, but all future court proceedings concerning child support, child custody, contempt petition, modification of rehabilitative alimony, and any and all other matters. In contrast, Ms. Mora's document, which was drafted by her attorney, states in relevant part "that all pending litigation regarding claims against

each other arising from the property at 8502 Quito Road, Millington, Tennessee shall be compromised, settled and said pending litigation be dismissed." Ms. Mora contended that this agreement only involved proceedings surrounding the marital home. The trial court agreed with Ms. Mora and found that the parties only intended to settle their differences regarding the marital home. Mr. Mora claims on appeal that the trial court erred in accepting Ms. Mora's agreement as valid and rejecting his agreement.

Interpretation of a written contract is a matter of law, rather than a matter of fact. See Hamblen County v. City of Morristown, 656 S.W.2d 331, 335-36 (Tenn. 1983); Standard Fire Ins. v. Chester O'Donley & Assocs., Inc., 972 S.W.2d 1, 5-6 (Tenn. Ct. App. 1998). The purpose of interpreting a written contract is to ascertain and to give effect to the contracting parties' intentions. See Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975); Gredig v. Tennessee Farmers Mut. Ins. Co., 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994). In the case of written contracts, these intentions are reflected in the contract itself. Thus, the search for the contracting parties' intent should focus on the four corners of the contract, see Whitehaven Community. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998); Hall v. Jeffers, 767 S.W.2d 654, 657-58 (Tenn. Ct. App. 1988), and the circumstances in which the contract was made. See Penske Truck Leasing Co. v. Huddleston, 795 S.W.2d 669, 671 (Tenn. 1990); Pinson & Assocs. Ins. Agency, Inc. v. Kreal, 800 S.W.2d 486, 487 (Tenn. Ct. App. 1990).

In the absence of fraud or mistake, courts should construe contracts as written. See Frank Rudy Heirs Assocs. v. Sholodge, Inc., 967 S.W.2d 810, 814 (Tenn. Ct. App. 1997); Whaley v. Underwood, 922 S.W.2d 110, 112 (Tenn. Ct. App. 1995). The courts should accord contractual terms their natural and ordinary meaning, Evco Corp. v. Ross, 528 S.W.2d 20, 23 (Tenn. 1975), and should construe them in the context of the entire contract. See Wilson v. Moore, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996); Rainey v. Stansell, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992). The courts should also avoid strained constructions that create ambiguities where none exist. See Hillsboro Plaza Enters. v. Moon, 860 S.W.2d 45, 47-48 (Tenn. Ct. App. 1993).

The courts may not make a new contract for parties who have spoken for themselves, see Petty v. Sloan, 277 S.W.2d 355, 359 (Tenn. 1955), and may not relieve parties of their contractual obligations simply because these obligations later prove to be burdensome or unwise. See Atkins v. Kirkpatrick, 823 S.W.2d 547, 553 (Tenn. Ct. App. 1991). Thus, when called upon to interpret a contract, the courts may not favor either party. See Heyer-Jordan & Assocs., Inc. v. Jordan, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990).

Upon review of the agreements drafted by the two parties, we agree with the trial court that Ms. Mora's document accurately reflects the parties' agreement. Ms. Mora's document is very clear in that it states "that all pending litigation regarding claims against each other arising from the property at 8502 Quito Road, Millington, Tennessee shall be compromised, settled and said pending litigation be dismissed." On the other hand, the language in Mr. Mora's document does not support his allegation that the parties intended to settle all their disputes arising out of the divorce. Therefore, this issue is without merit.

Third, Mr. Mora alleges that the trial court erred by assuming jurisdiction for custody and support of the parties' adult child. The concept of subject matter jurisdiction, as opposed to territorial jurisdiction, involves the court's authority to hear a particular type of case. See Meighan v. U.S. Sprint Comm. Co., 924 S.W.2d 632, 639 (Tenn. 1996); Landers v. Jones, 872 S.W.2d 674, 675 (Tenn. 1994); Turpin v. Conner Bros. Excavating Co., 761 S.W.2d 296, 297 (Tenn. 1988), *overruled on other grounds* by Five Star Express, Inc. v. Davis, 866 S.W.2d 944, 950 (Tenn. 1993). Subject matter jurisdiction can only be conferred by statute or constitution. See Landers, 872 S.W.2d at 675; Turpin, 761 S.W.2d at 297; Kane v. Kane, 547 S.W.2d 559, 560 (Tenn. 1977). The issue of subject matter jurisdiction is not waivable and thus may be raised at any time, regardless of whether any objection to the assertion of jurisdiction was made at the trial court level. See State ex rel. Dep't of Social Servs., 736 S.W.2d 84, 85 n.2 (Tenn. 1987); Scales v. Winston, 760 S.W.2d 952, 953 (Tenn. Ct. App. 1988). Any order entered by a court without subject matter jurisdiction is a nullity and is therefore unenforceable. See Scales, 760 S.W.2d at 953; Ward v. Lovell, 113 S.W.2d 759, 760 (Tenn. Ct. App. 1937).

We note the case of Kilby v. Kilby, No. 03A019712-CH00549, 1999 WL 76065, at *1 (Tenn. Ct. App. Jan. 28, 1999). In Kilby, the parties had a severely disabled child that required constant care. See id. at *1. After the child reached majority, the trial court ordered the mother to have custody of the adult child, and the court ordered father to pay support for his adult child. See id. at *2. On appeal, the court of appeals reversed the ruling of the trial court and held that "the Trial Court had no jurisdiction to hear this matter and to modify the physical custody of Shannon under the agreed divorce decree. Rather, the procedures contained in T.C.A. 34-13-101, et. seq., which address conservatorship[s], should have been followed." Id. at 5-6.

Also, in Scott v. Scott, No. 03A01-9708-CH-00305, 1999 WL 39506, at *1 (Tenn. Ct. App. Jan. 29, 1999), the eastern section dealt with another similar case. In Scott, the parties were involved in a custody dispute over a twenty year old disabled daughter. See id. at *1. The trial court held that the child custody statutes were inapplicable to the daughter because she was a legal adult. See id. Additionally, the trial court held that the proper avenue to address the child's needs was a conservatorship proceeding. See id. On appeal, the eastern section of this court upheld the ruling of the trial court. See id. at *4.

This court also dealt with the issue now before us in Day v. Gatewood, No. 02A01-9805-CV-00141, 1999 WL 269928, at *1 (Tenn. Ct. App. April 30, 1999). In Day, the father was ordered by the trial court to provide support for the parties' minor son. See id. at *1. After the parties' son reached the age of majority, he was involved in an automobile accident. See id. When the son was twenty years of age, his mother filed a petition seeking a continuation of father's child support obligation. See id. Mother alleged that son had sustained severe brain damage as a result of the automobile accident, rendering him totally disabled and unable to support or care for himself. See id. The trial court entered an order requiring Mr. Day to provide support for the parties' adult son. See id. On appeal, Mr. Day alleged that the trial court did not have subject matter jurisdiction to

order him to continue to support the parties' adult son. See id. After reviewing Kilby and Scott, we held the following:

> Based on the foregoing, we find that the trial court in the instant case was without subject matter jurisdiction when it entertained Mrs. Gatewood's 1993 petition for continuation of Mr. Day's obligation to pay child support. Consequently, we agree with Mr. Day that the consent order subsequently entered by the trial court is void and unenforceable. Like the court in Scott, we think that Tennessee's conservatorship statutes provide an appropriate avenue for addressing the needs of the parties' adult child.

Day, 1999 WL 269925, at *5.

In the instant case, consistent with the Kilby and Scott decisions and our decision in Day, we must hold that the trial court had no subject matter jurisdiction to appoint a guardian for Pamela or to order Mr. Mora to contribute support for Pamela. Therefore, we find that the trial court's Order for Custody, Support, and Fees is void and unenforceable. We find that the conservatorship statutes[1] provide an appropriate avenue to address Pamela's needs. If a court having jurisdiction in conservatorship proceedings[2] determines that Pamela is in need of a conservator, the person appointed as her conservator may then request an order requiring Mr. Mora and/or Ms. Mora to contribute to Pamela's support.[3] In light of our holding that the trial court lacked subject matter jurisdiction to appoint a guardian and to order support, we see no need to address Mr. Mora's fourth issue.

---

[1] *See* TENN. CODE ANN. § 34-13-101 et. seq. (1996 & Supp. 2000).

[2] An action for the appointment of a conservator may be commenced by the filing of a petition in a court with probate jurisdiction or in any other court of record in the alleged disabled person's county of residence. *See* TENN. CODE ANN. § 34-13-101 (1996).

[3] While we recognize the possibility that a conservator may be appointed in the future, we make no finding as to whether Pamela is disabled such that she needs assistance in managing her affairs.

**Conclusion**

For the reasons stated above, we affirm in part, reverse in part and remand this case for further proceedings consistent with this opinion. Costs on appeal are taxed one-half to Mr. Mora and one-half to Ms. Mora, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE